**PEASE & CURREN REFINING, INC., Plaintiff,**

v.

**SPECTROLAB, INC., Defendant.**

**No. CV 89–4468 DT (BX).**

United States District Court, C.D. California.

Aug. 13, 1990.

Arthur P. Greenfield, Steven T. Graham, Deborah Fabricant, Snell & Wilmer, Irvine, Cal., for plaintiff.

William K. Swank, Leslie M. Smario, Brobeck, Phleger & Harrison, Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION

TEVRIZIAN, District Judge.

### BACKGROUND

This case arises from an accident which occurred at the refining plant of Plaintiff Pease & Curren Refining, Inc. ("Pease & Curren") on March 21, 1989. Pease & Curren extracts and refines precious metals from liquid and solid by-products (hereinafter "waste") it receives from various clients. Defendant Spectrolab, Inc. ("Spectrolab") is one such client.

Currently before this court are three motions brought by Spectrolab pursuant to Fed.R.Civ.P. 12(b)(6) and 12(f) to dismiss and strike portions of Pease & Curren's complaint. For the purposes of these motions, this court accepts all of the facts asserted by Pease & Curren, the non-moving party, as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 *reh'g denied* 396 U.S. 869, 90 S.Ct. 35, 24 L.Ed.2d 123 (1969) (*Jenkins*), *In Re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1154 (5th Cir. 1979).

On two occasions in either late January or early February, 1989, Spectrolab requested that Pease & Curren pick-up nine fifty-five gallon drums of waste from Spectrolab's facility in Sylmar, California. The labels on the drums indicated that the drums contained a palladium and silver compound in a nitric acid medium. Pease & Curren dispatched its employee, Jorge Robledo, to pick up the waste. On both occasions, Robledo refused to transport the waste because it was contained in rusty tin drums rather than in steel drums as required by law. Spectrolab ultimately transferred the bulk of the waste to steel drums, but was unable to remove some sludge from the bottom of the tin drums. Robledo then transported both the steel drums and the tin drums to Pease & Curren's facility.

Sometime after receiving the waste, Pease & Curren tested small samples from each drum in order to determine the precious metal content. The tests revealed that some of the steel drums contained an alkaline cyanide solution rather than nitric acid. Samples then were taken to Spectrolab for analysis. Spectrolab did not contact Pease & Curren regarding the samples until March 24, 1989. In the interim, Pease & Curren did not process the waste in the drums containing the alkaline cyanide solution.

Pease & Curren did proceed to salvage silver and palladium from the sludge at the bottom of the tin drums. Following its customary procedure, Pease & Curren removed the sludge from the drums, ran it through filter paper, rinsed it with clear water, spread it onto large trays and placed it outside to dry.

On March 21, 1989 at approximately 10:45 A.M., the material believed to be silver and palladium unexpectedly exploded ("the explosion") and killed Robledo. The Orange County Fire Department and Bomb Squad closed down and took control of Pease & Curren's facility for approximately thirty-six hours. The Orange County Health Care Agency and the fire department ordered Pease & Curren to retain a company to remove from Pease & Curren's facility all of the remaining waste received from Spectrolab. Pease & Curren has incurred expenses exceeding $39,000 for this removal.

Analysis of the Spectrolab waste which had been labeled as silver and palladium in a nitric acid solution revealed that it also contained titanium powder, silver chloride, cyanide and nitrates. At the time it filed its initial complaint, Pease & Curren believed that the combination of these elements caused the explosion.

Pease & Curren filed a complaint in this court against Spectrolab for: (1) Recovery of Response Costs Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) §§ 101, 107, 113, 42 U.S.C. §§ 9601, 9607, 9613(b) (Supp.1989), (2) Negligence, (3) Strict Liability, (4) Negligent Misrepresentation, (5) Declaratory Relief, and (6) Equitable Indemnity. Spectrolab's answer asserted numerous defenses and a cross complaint which are not currently at issue. This court has jurisdiction over this matter pursuant to CERCLA, § 113, 42 U.S.C. § 9613(b) and 28 U.S.C. § 1331.

Subsequent to the filing of its initial complaint, Pease & Curren discovered that the titanium metal flake is explosive when it is dried, and that the drying of the titanium metal flake caused the explosion. Thus, Pease & Curren moved to amend its complaint accordingly. Although Spectrolab opposed this motion, this court granted Pease & Curren's motion for leave to file a first amended complaint.

Contrary to its initial complaint, Pease & Curren now admits that the mislabeling by Spectrolab of the drums as containing nitric acid rather than alkaline cyanide waste ("the mislabeling") was not the cause in fact of the explosion. Pease & Curren nevertheless retained allegations regarding the cyanide related mislabeling in its first amended complaint.

Spectrolab now brings before this court motions to: (1) strike all allegations in Pease & Curren's first amended complaint which refer to the mislabeling of the drums, (2) dismiss Pease & Curren's prayer for punitive damages, and (3) dismiss Pease & Curren's prayer for attorney's fees.

## MOTION TO STRIKE THE MISLABELING RELATED ALLEGATIONS

Spectrolab seeks to have this court strike a total of thirty-three lines from Pease & Curren's first amended complaint pursuant to Fed.R.Civ.P. 12(f). The most sanguine of this text reads as follows:

Specifically, Pease & Curren is informed and believes and thereon alleges that the employees responsible for labeling the hazardous waste were improperly trained and that they had previously mislabelled hazardous waste shipped to other refiners and disposal sites and that Spectrolab had notice of the prior incidents of mislabeling.

. . . . .

Spectrolab knew or should have known that it is against the law to transport cyanide and nitric acid on the same vehicle and that if cyanide and nitric acid are mixed, a lethal gas is created.

. . . . .

[I]n conscious disregard for the safety of Pease & Curren and its employees, Spectrolab so negligently and carelessly stored, labelled and manifested its waste so as to cause Pease & Curren to transport a shipment of cyanide and nitric acid waste on a single vehicle.

This court "may order stricken from any pleading any ... redundant, immaterial, impertinent, or scandalous matter." Fed. R.Civ.P. 12(f). Motions to strike, however, are generally viewed with disfavor and are not frequently granted. *Clement v. American Greetings Corp.*, 636 F.Supp. 1326, 1332 (S.D.Cal.1986) (*Clement*), *citing* 5 Wright & Miller, Federal Practice & Procedure 2d § 1380, *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201 n. 1 (D.C.Cir. 1981), *citing* 5 Wright & Miller, Federal Practice & Procedure § 1380 (1969). A motion to strike pursuant to Rule 12(f) should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2nd Cir. 1976) (citations omitted). The question of relevancy and admissibility usually should not be determined solely on the pleadings. *Id.* (citations omitted).

Spectrolab argues that the mislabeling allegations are immaterial because Pease & Curren admits that the mislabeling did not cause the explosion and does not claim to have suffered any injury as a result of the mislabeling.

Conversely, Pease & Curren argues that the mislabeling allegations are material to its claim for punitive damage because the mislabeling was part of a pattern of carelessness on the part of Spectrolab. Pease & Curren further claims that this pattern of activity was a proximate cause of Pease & Curren's injury.

Spectrolab's motion to strike is premature at best. As Spectrolab itself points out, in order for Pease & Curren to prevail on its claim for punitive damages under its current claim, Pease & Curren must demonstrate that Spectrolab acted with malice. Cal.Civ.Code § 3294(a) (Supp.1989). Malice is defined as "despicable conduct which is carried on by the defendant with a conscious disregard of the rights or safety of others." Cal.Civ.Code § 3294(c)(1) (Supp. 1989). At this preliminary stage, this court cannot determine that the mislabeling is not relevant to the issue of the degree to which Spectrolab's conduct might have been malicious as defined by section 3294. Indeed, construing the facts most favorably to Pease & Curren, Spectrolab's knowledge of mislabeling and illegal transportation of wastes appears to be quite relevant to whether Spectrolab acted with conscious disregard for the safety of others. Spectrolab's motion to strike the mislabeling allegations therefore is denied without prejudice.

### MOTION TO DISMISS THE PRAYER FOR PUNITIVE DAMAGES

In its prayer for relief, Pease & Curren has requested punitive damages against Spectrolab. Spectrolab seeks to have this court dismiss this prayer as having been insufficiently pleaded. On the face of Spectrolab's motion to dismiss Pease & Curren's prayer for punitive damages, it is unclear whether Spectrolab intended to bring this motion under Fed.R. Civ.P. 12(b)(6) or Fed.R.Civ.P. 12(f). Spectrolab's motion to dismiss is more properly brought under Fed.R.Civ.P. 12(b)(6) and will be so treated.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the complaint is construed in the light most favorable to the non-moving party, and all of the allegations contained in the non-moving party's complaint are taken as true. *Jenkins*, 395 U.S. at 421–22, 89 S.Ct. at 1848–49. This court will grant a motion to dismiss for failure to state a claim upon which relief can be granted only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Although Pease & Curren does not specify the root of its claim for punitive damages, it appears to arise from Pease & Curren's negligence claim against Spectrolab. Because this is a state cause of action based on California law, this court applies California substantive law to the instant claim. *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Punitive damages under California law are conferred by Cal.Civ.Code § 3294 (Supp.1989) which states in pertinent part:

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

(c) As used in this section, the following definitions shall apply:

(1) Malice means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

Although this court is governed in the instant cause of action by substantive state law, this court's determinations regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Pleading requirements under the Federal Rule of Civil Procedure are far more liberal than those of the California Rules of Civil Procedure.

Under the Federal Rules, a pleading need only "contain ... a short and plain statement of the claim showing that the pleader is entitled to relief, and ... a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). Furthermore, this court shall construe all pleadings so "as to do substantial justice." Fed.R.Civ.P. 8(f). The Federal Rules goes on to state that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

Spectrolab argues that despite the federal rules liberal pleading requirements, Pease and Curren still has failed to adequately plead the essential elements required for a claim of punitive damages under California law. Citing *Taylor v. Superior Court*, 24 Cal.3d 890, 895–95, 598 P.2d 854, 856, 157 Cal.Rptr. 693, 696 (1979) (*Taylor*), Spectrolab contends that Pease & Curren "must establish that the defendant was aware of the probable dangerous consequences of his conduct, and that [the defendant] willfully and deliberately failed to avoid those consequences." Spectrolab claims that Pease & Curren's averments are deficient because (1) Pease & Curren does not allege that Spectrolab was "aware that Pease & Curren would isolate the titanium from the waste," and (2) Pease & Curren alleges only that Spectrolab acted in "conscious disregard for the safety of Pease & Curren" rather than alleging that Spectrolab acted "willfully and deliberately."

In its complaint, Pease & Curren alleges, *inter alia*, that "Spectrolab knew that the presence of titanium metal flake in the waste solution created a dangerous condition in that, if the solution was dried, the presence of titanium would cause the solution to explode." Pease & Curren further alleges that "Spectrolab, in conscious disregard for the safety of Pease & Curren and its employees, gave Pease & Curren the waste, which Spectrolab knew contained titanium metal flake, but failed to advise Pease & Curren that the presence of the titanium metal flake would cause the waste to explode if it was removed from the nitric acid liquid waste and allowed to dry during the refinement process."

Pease & Curren's pleadings meet not only the federal standard, but also the more rigid California standard cited by Spectrolab itself. The complaint at issue in *Taylor* which the California Supreme Court deemed to have adequately pleaded malice for a claim of punitive damages used the language "acted in conscious disregard of Plaintiff['s] safety ..." *Taylor*, 24 Cal.3d at 893, 598 P.2d at 855, 157 Cal.Rptr. at 695. This language is nearly identical to the language used by Pease & Curren in the present case. *See also Clement*, 636 F.Supp. at 1333–34 (general averment of malice sufficient to maintain claim of punitive damages). It should be noted that even if Pease & Curren's claim for punitive damages were improperly pleaded, Pease & Curren would only have to substitute the words "conscious disregard" with "willfully and deliberately." It is precisely this type of semantic gymnastics that the Federal Rules are designed to avoid.

As with Spectrolab's previously discussed motion to strike, Spectrolab's motion to dismiss Pease & Curren's prayer for punitive damages is premature. This motion would be more appropriately brought as a motion for summary judgment or a motion for summary adjudication of issues after adequate discovery. *See generally id.* Spectrolab's motion to dismiss Pease & Curren's prayer for punitive damages therefore is denied without prejudice.

## MOTION TO DISMISS THE PRAYER FOR ATTORNEY'S FEES

■ Pease & Curren claims a right to attorney's fees pursuant to CERCLA, §§ 101, 107, 42 U.S.C. §§ 9601, 9607 as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA). Spectrolab argues that Pease & Curren cannot recover attorney's fees under CERCLA because Pease & Curren is a private party and CERCLA does not expressly provide for the recovery of attorney's fees by a private party. Thus, Spectrolab now requests that this court dismiss Pease & Curren's prayer for attorney's fees. Whether a private party may claim

attorney's fees pursuant to CERCLA is a matter of first impression in the Ninth Circuit.

It is well established that the federal government can recover its attorney's fees pursuant to CERCLA. CERCLA, § 104(b)(1), 42 U.S.C. § 9604(b)(1) (Supp. 1989) ("the President may undertake such planning, *legal*, fiscal, economic, engineering, architectural, and other studies or investigations as he may deem necessary or appropriate to plan and direct response actions, *to recover the costs thereof*, and to enforce the provisions of this chapter.") (emphasis added), *accord United States v. Mottolo*, 695 F.Supp. 615, 631 (D.S.C.1988).

CERCLA also expressly allows a private party to maintain a claim for the recovery of necessary response costs consistent with the national recovery plan. CERCLA, 107(a)(2)(B), 42 U.S.C. 9607(a)(2)(B) (Supp. 1989), *Cadillac Fairview/California v. Dow Chemical Co.*, 840 F.2d 691, 693 (9th Cir.1988). CERCLA does not, however, expressly discuss the award of attorney's fees to a private party. Moreover, other out-of-circuit district courts have addressed this issue and have reached polar outcomes. *See e.g., Shapiro v. Alexanderson*, 741 F.Supp. 472 (S.D.N.Y.1990) (WESTLAW, Allfeds database) (attorney's fees recoverable by private party for proper response activities), *General Electric Co. v. Litton Business Systems Inc.*, 715 F.Supp. 949 (W.D.Mo.1989) (attorney's fees awarded to private party under rubric of "response costs"), *cf. BCW Associates, LTD v. Occidental Chemical Corp.*, No. 86 Civ. 5947, 1988 WL 102641 (E.D.Pa. September 29, 1988) (court awarded pre-filing attorney's fees without comment, but declined to award attorney's fees for litigation), *compare Fallowfield v. Strunk*, No. 89 Civ. 8644, 1990 WL 52745 (E.D.Pa. April 23, 1990) (*Fallowfield*) (attorney's fees not recoverable by private party), *T & E Industries, Inc. v. Safety Light Corp.*, 680 F.Supp. 696 (D.N.J.1988) (attorney's fees not recoverable by private party).

Because this action arises under a federal statute, this court's interpretation of CERCLA is predominately guided by congressional intent. *Mardan Corporation v. C.G.C. Music, LTD.*, 804 F.2d 1454, 1458 (9th Cir.1986) (*Mardan*). Unfortunately, as the Third Circuit has noted, "CERCLA is not a paradigm of clarity or precision. It has been criticized frequently for unartful drafting and numerous ambiguities ... Problems of interpretation have arisen from the Act's use of inadequately defined terms, a difficulty particularly apparent in the response costs area." *Artesian Water Co. v. Government of New Castle County*, 851 F.2d 643, 648 (3rd Cir.1988). An examination of the purpose of CERCLA, however, indicates that Congress did intend to allow, and implicitly provided for, the recovery of attorney's fees by private parties as a necessary cost of response.

Pease & Curren claims attorney's fees pursuant to section 107(a) which states in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to defenses set forth in subsection (b) of this section—
>
> .        .        .        .        .
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—
>
> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
>
> (B) *any other necessary costs of response incurred by any other person consistent with the national contingency plan;*

CERCLA, § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B) (Supp.1989) (emphasis added).

CERCLA also provides that "[t]he terms 'respond' or 'response' means remove, removal, remedy, and remedial action, all such terms (including the terms 'removal'

and 'remedial action') *include enforcement activities related thereto.*" CERCLA, § 101(25), 42 U.S.C. § 9601(25) (Supp.1989) (emphasis added). The language "enforcement of activities related thereto," *inter alia,* was added by the SARA amendments of 1986. It is upon this language that this court bases its decision.

It is a well recognized principle of statutory construction that the primary rule of implementing legislative intent "is to ascertain and give effect to the plain meaning of the language used." *Pacific Mutual Life Insurance Company v. American Guaranty Life Insurance Company,* 722 F.2d 1498, 1500 (9th Cir.1984) (citations omitted). "Interpretive constructions of a statute which would render some words superfluous, defy common sense, or lead to mischief or absurdity are to be avoided." *Id.* (citations omitted).

Turning to the language of the statute in light of the aforementioned principles of statutory construction, this court holds that Congress intended to allow private parties to claim attorney's fees pursuant to a CERCLA action. Section 107(a)(4)(B) expressly allows a private party to recover "necessary costs of response" pursuant to a CERCLA action. CERCLA, § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B) (Supp.1989). "Response" is defined by section 101(25) to include, *inter alia,* "enforcement activities related thereto." CERCLA, § 101(25), 42 U.S.C. § 9601(25) (Supp.1989). In ascertaining the plain meaning of "enforcement activities," this court concludes that Congress intended for "enforcement activities" to include attorney's fees expended to induce a responsible party to comply with the remedial actions mandated by CERCLA. This court cannot ascertain any other logical interpretation which would give effect to this phrase. If this court were to rule otherwise, the phrase "enforcement activities" would be superfluous.

Furthermore, this holding is consistent with the legislative purposes of CERCLA. CERCLA was enacted by Congress as a response to "the threat to public health posed by the widespread use and disposal of hazardous substances." *Mardan,* 804 F.2d at 1455, *citing* 126 Cong.Rec. 31964 (statement of Rep. Florio). "CERCLA is essentially a remedial statute designed by Congress to protect and preserve public health and the environment.... [I]ts provisions [therefore should be] construe[d] ... liberally to avoid frustration of the beneficial legislative purposes." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 805 F.2d 1074, 1081 (1st Cir.1986) (*Dedham*), *cf. State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1045 (2nd Cir.1985). "[CERCLA's] purpose was to ensure the prompt and effective cleanup of waste disposal sites, and to assure that parties responsible for hazardous substances bore the cost of remedying the conditions they created." *Mardan,* 804 F.2d at 1455, *accord Dedham,* 805 F.2d at 1081. Allowing a private party to recover attorney's fees is consistent with this purpose.

A few of the points raised by Spectrolab merit discussion. Firstly, Spectrolab contends that the House Report on the 1986 SARA amendments reflects Congress's intent to limit the recovery of enforcement costs to the federal government only. The House Report states that "section 101(25) also modifies the definition of 'response action' to include related enforcement activities. The change confirms the EPA's authority to recover costs for enforcement actions against responsible parties." H.R. Rep. No. 253, 99th Cong., 2nd Sess., pt. 1, at 66–67 (1985), *reprinted in* 1986 U.S. Code Cong. & Admin.News, 2835, 2848–49.

The court in *Fallowfield* relied upon this House Report in holding that Congress intended to allow only the federal government to claim attorney's fees under the rubric of "enforcement activities" pursuant to CERCLA. *Fallowfield,* No. 89 Civ. 8644 at 6. This reasoning, however, ignores the fact that the definition for "response" provided in section 101(25) nevertheless applies to section 107(a)(4)(B); Congress has not expressly limited the definitions set forth in 101(25) to federal parties. Thus, this court is bound by the plain language of the text and will not take it upon itself to so limit the statute.

**952**

Secondly, Spectrolab argues that in expressly allowing the President to recover legal costs under section 104(b)(1), CERCLA creates a negative implication that only the President can recover legal costs. This argument runs afoul of the language added by SARA to section 101(25). Because this court has determined that the recovery of costs of "enforcement activities" as provided in section 101(25) applies to private parties as well as to the federal government, any negative implication which might have existed disappeared with the SARA amendments.

Finally, Spectrolab argues that because only one of Pease & Curren's six claims arises under CERCLA, allowing Pease & Curren to claim attorney's fees would encourage private parties to mask garden variety tort claims as CERCLA claims in order to recover attorney's fees. This concern is misplaced. Allowing Pease & Curren to claim attorney's fees under CERCLA does not automatically allow Pease & Curren to recover its entire expenditure on attorney's fees, including those dollars spent on pursuing other claims. In the event that Pease & Curren does succeed in its CERCLA claim, the amount of attorney's fees that Pease & Curren might be awarded would be an issue to be determined on an allocation basis at a later time.

In light of the foregoing analysis, this court holds that Pease & Curren's claim for attorney's fees pursuant to CERCLA, § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B) (Supp.1989) is consistent with Congress's intent in enacting CERCLA. Spectrolab's motion to dismiss Pease & Curren's claim for attorney's fees therefore is denied with prejudice.