KEY TRONIC CORPORATION, a Washington corporation, Plaintiff,

v.

UNITED STATES of America; the United States Air Force; Donald B. Rice, the Secretary of the United States Air Force, in his official capacity; Alumax, Inc., a Delaware corporation, Alumax Fabricated Products, Inc., a Delaware corporation, and Alumax Mill Products, Inc., a Delaware corporation, Defendants.

No. CS–89–694–JLQ.

United States District Court, E.D. Washington.

March 19, 1991.

As Amended Aug. 12, 1991.

James R. Moore, Gregory T. Costello, Perkins Coie, Mark W. Schneider, Seattle, Wash., and Richard E. Hayes, Chase, Haskell, Hayes & Kalamon, Spokane, Wash., for plaintiff.

Stephanie Johnson, U.S. Atty., Spokane, Wash., Marilyn Perry Jacobsen, Eileen McDonough, U.S. Dept. of Justice, Land & Natural Resources Div., Environmental Defense Section, Washington, D.C., William D. Maer, Leslie C. Nellermoe, Heller & Ehrman, Seattle, Wash., Roger E. Metz, Ronald G. Morrison, Morrison & Leveque, Spokane, Wash., and Dennis Smith, Wilson, Smith, Cochran & Dickerson, Seattle, Wash., for defendants.

## ORDER RE: PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

QUACKENBUSH, Chief Judge.

BEFORE THE COURT is defendant United States' Motion for Enlargement of Time (Ct.Rec. 107), the plaintiff's Motion For Summary Judgment Re: Contribution Claim (Ct.Rec. 99), the plaintiff's Motion For Summary Judgment that Alumax is a Covered Person (Ct.Rec. 103), the plaintiff's Motion for Partial Summary Judgment that Response Costs are Recoverable (Ct.Rec. 94), and defendant United States' Motion to Stay (Ct.Rec. 113), heard with oral argument on March 11, 1991. Mark Schneider and Kathryn Tucker represented the plaintiff. Leslie Nellermoe and William Maer represented defendant Alumax. Eileen McDonough represented the United States Air Force. Having reviewed the record, heard from counsel, and fully considered these matters, the court enters this order to memorialize its oral rulings on these motions.

## FACTUAL BACKGROUND

From 1968 to 1986 Spokane County maintained the Colbert Disposal Site ("Colbert") in Spokane County, Washington. From the early 1970's through 1980, the County contracted to have defendant William Schmidt do the work necessary to construct, improve and complete the landfill. In that capacity, Schmidt accepted and disposed of refuse at Colbert. Key Tronic alleges that between 1975 and 1980, Schmidt accepted liquid chemicals from the United States Air Force ("USAF"), Alumax Fabricated Products, Inc. and Alumax Mill Products, Inc. (hereafter collectively "Alumax"), and Key

Tronic Corporation, and, therefore, that Key Tronic is entitled to contribution and cost recovery from the USAF and Alumax for monies it paid and expended under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*

In 1980 drinking water wells around Colbert were found to be contaminated by various chemicals including "TCA" and "TCE". It is not disputed that Key Tronic had deposited such materials at Colbert. Key Tronic alleges that it incurred, at its own initiative, expenses totaling $1,271,-511.10 responding to that discovery. Key Tronic subsequently entered into a Consent Decree and Scope of Work statement with the Washington Department of Ecology ("DOE") and the United States Environmental Protection Agency ("EPA"); as part of that decree, Key Tronic agreed to pay $4.2 million in clean-up costs. The Air Force also entered into a consent decree with DOE and EPA in which the Air Force agreed to pay EPA $1.45 million to resolve its liabilities with the EPA for the Colbert cleanup.

On August 9, 1990, the court entered an order (Ct.Rec. 67) relating to the parties' motions for summary judgment. The court dismissed Key Tronic's contribution claims against the USAF relating to Key Tronic's $4.2 million in liability from the consent decree; however, the court did not dismiss Key Tronic's claim against the USAF for contribution relating to the $1.2 million incurred independently by Key Tronic. The court granted in part Key Tronic's motion for partial summary judgment against the USAF, and held that Key Tronic had established CERCLA liability against the Air Force. The court denied Key Tronic's motion for summary judgment against Alumax and held that Key Tronic had not met its burden of proof in establishing that there was no triable issue of fact as to Alumax's liability under CERCLA. The court dismissed the claims against defendant Schmidt.

The United States and Key Tronic subsequently negotiated a consent decree which was signed by this court on January 14, 1991. *See* Ct.Rec. 92. The consent decree resolved all but the following issues of response cost liability between the United States and Key Tronic:

A. Costs and fees incurred by attorneys and investigators for Key Tronic in the amount of $365,649 during Key Tronic's search for additional potentially responsible parties and costs and fees incurred by attorneys related to the negotiation of the Consent Decree between Key Tronic, the United States, and the State of Washington in *The State of Washington v. County of Spokane,* CS–89–033–RJM;

B. The salary of David Powers, Key Tronic's General Counsel and Secretary, in the amount of $70,000 for time spent supervising the search for additional potentially responsible parties and negotiating the Consent Decree identified in A;

C. Attorneys' fees and costs incurred by Key Tronic in the prosecution of this action; and

D. Prejudgment interest on excepted claims.

Ct.Rec. 92, pp. 2–3.

Key Tronic now brings the following motions for summary judgment. First, Key Tronic moves for summary judgment that its $4.2 million in liability from the consent decree constitutes "recoverable" monies under CERCLA Section 113, 42 U.S.C. § 9613, for purposes of its contribution claim against Alumax. Second, Key Tronic moves for summary judgment that Alumax disposed of hazardous wastes at the Colbert landfill. Third, Key Tronic moves for summary judgment that its independent response costs of $1.2 million are recoverable under CERCLA.

At oral argument, the plaintiff and defendant Alumax informed the court that all claims against defendant Alumax had been settled, and, therefore, that oral argument on the motions as they related to Alumax was unnecessary. The plaintiff and defendant United States informed the court that, should the court rule against the United States, they had stipulated to the quantum

of liability and that they would subsequently submit that stipulation to the court.

## DISCUSSION

### I. MOTIONS DIRECTED SOLELY AGAINST DEFENDANT ALUMAX

Because of the settlement between Key Tronic and Alumax, two of Key Tronic's motions have been mooted. Therefore, Key Tronic's motion that the $4.2 million consent decree is recoverable under CERCLA for contribution purposes, and Key Tronic's motion that Alumax is a covered person under CERCLA ARE HEREBY DENIED AS MOOT.

### II. RECOVERABILITY OF "RESPONSE COSTS"

Key Tronic moves this court to hold that monies it spent independently of the Consent Decree are recoverable under CERCLA as "response costs." By the January 1991 consent decree between Key Tronic and the Air Force, Key Tronic has waived all claims against the United States except for the four items contested. Because Key Tronic has settled its claims with Alumax, these excepted items are the sole remaining claims at issue.

Key Tronic contends the following claims are recoverable from the Air Force under CERCLA as "response costs": (1) prejudgment interest for any liability assessed against the USAF from these motions; (2) attorneys' fees for prosecuting this action; (3) attorneys' and investigators' fees, and opportunity costs of Key Tronic's executive resulting from the search for other potentially responsible parties; and (4) attorneys' fees and opportunity costs of Key Tronic's executive related to the negotiation of the consent decree.[1]

#### A. Prejudgment Interest Against the USAF

CERCLA waives sovereign immunity with the following statutory provision:

**Application of Act to Federal Government.** (1) In general. Each department, agency, and instrumentality of the United States (including the executive, legislative, and judicial branches of government) shall be subject to, and comply with, this Act in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 107 of this Act.

42 U.S.C. § 9620(a)(1). CERCLA also provides that prejudgment interest in cost recovery actions is available:

The amounts recoverable in an action under this section shall include interest on the amounts recoverable under [the preceding paragraphs].

42 U.S.C. § 9607.

Based on the foregoing provisions, Key Tronic contends that prejudgment interest may be awarded against the United States Government.

▪ The Government asserts that prejudgment interest may not be awarded against it for sovereign immunity reasons. Absent express congressional consent to the award of interest in addition to a general waiver of immunity to suit, the United States is immune from an interest award. *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). The Government contends that CERCLA does not contain an express waiver of immunity from prejudgment interest as required by *Shaw*, and the general waiver of liability, despite its reference to Section 107 of CERCLA, is legally inadequate to award prejudgment interest.

▪ The court finds the Government's argument to be unpersuasive. *Shaw* involved a statute which provided that the United States shall be liable for costs as a private individual; the statute in *Shaw* did not make any reference to prejudgment interest. The face of 42 U.S.C. § 9620 makes quite clear that Congress waived its sovereign immunity and intended for the Government to be treated as any other private defendant. CERCLA clearly states that in cost recovery actions under § 107

---

1. Because the parties have stipulated to the quantum of liability for these items, the court will address solely the legal issue of recoverability of these items.

the plaintiff may recover prejudgment interest. Thus, this court holds that CERCLA allows prejudgment interest as an element of damages against the United States.

### B. Attorneys' Fees for Prosecuting this Action

■ Attorneys' fees may not be recovered without a specific statutory provision allowing such a recovery. *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 262, 95 S.Ct. 1612, 1624, 44 L.Ed.2d 141 (1975). CERCLA does not have a provision which specifically states that enabling plaintiff is entitled to recover "attorney's fees". Liability of responsible parties under § 107 includes the necessary costs of response resulting from a hazardous waste release or threatened release. 42 U.S.C. § 9607. In the definitions section, "respond or response means remove, removal, remedy, and remedial action, all such terms (including the terms removal and remedial action) include *enforcement activities related thereto.*" (emphasis supplied) 42 U.S.C. § 9601(25). CERCLA does not define "enforcement" or "enforcement activity".

CERCLA permits citizens who sue under the citizens' suit provision, 42 U.S.C. § 9659, to obtain relief from a district court. The court may not award money damages but may grant such relief in order to correct the violations and may impose civil penalties. The court may award to the prevailing party the costs of litigation, including attorneys' fees. 42 U.S.C. § 9659(f).

CERCLA provides special recovery measures for the United States Government. Section 107 permits the United States to recover all removal or remedial costs incurred which are not inconsistent with the national contingency plan. "Removal" costs are defined as including any actions taken under Section 104(b) of the Act. 42 U.S.C. § 9601(23). Section 104(b) permits the Government to incur legal costs and to recover those costs. 42 U.S.C. § 9604(b)(1). Case law establishes that the United States may recover its litigation costs under

CERCLA. *United States v. Northeastern Pharmaceutical & Chemical Co.,* 579 F.Supp. 823, 851 (W.D.Mo.1984), *aff'd in part and rev'd in part,* 810 F.2d 726 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *United States v. South Carolina Recycling & Disposal, Inc.,* 653 F.Supp. 984, 1009 (D.S.C. 1986), *aff'd in part and vacated in part,* 858 F.2d 160 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

Key Tronic asserts that it is entitled to its legal fees because the attorneys' fees required to bring this § 107 cost recovery action are "enforcement costs" recoverable as a necessary response cost. Key Tronic first cites two cases in which the Ninth Circuit characterized a Section 107 cost recovery claim by a private party as a "private enforcement action". *Cadillac Fairview, Inc. v. Dow Chemical Co.,* 840 F.2d 691, 694 (9th Cir.1988); *Wickland Oil Terminals v. Asarco, Inc.,* 792 F.2d 887, 892 (9th Cir.1986). From these cases Key Tronic contends that the recovery of attorneys' fees through the enforcement cost language has already been resolved. However, the Ninth Circuit's characterization of the cost recovery action appears to be dicta as the holdings of those cases did not turn upon the enforcement action language.

Some courts addressing this issue have held that attorneys' fees are recoverable. For example, in *General Electric Co. v. Litton Industrial Automation Systems, Inc.,* 920 F.2d 1415 (8th Cir.1990), the Eighth Circuit held that a private party bringing a cost recovery action under § 107 could recover attorneys' fees for bringing the action. In that case, General Electric purchased a piece of land on which Litton had previously dumped toxic wastes. GE entered into a settlement agreement with the state authorities, agreed to clean up the waste site, and subsequently sued Litton for its response costs pursuant to Section 107 of CERCLA. In holding that attorneys' fees were recoverable, the court gave the following rationale:

> [CERCLA] defines "response" as "remove, removal, remedy, and remedial ac-

tion; all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." A private party cost-recovery action such as this one is an enforcement activity within the meaning of the statute. Attorney fees and expenses necessarily are incurred in this kind of enforcement activity and it would strain the statutory language to the breaking point to read them out of the "necessary costs" that section 9607(a)(4)(B) allows private parties to recover. We therefore conclude that CERCLA authorizes, with a sufficient degree of explicitness, the recovery by private parties of attorney fees and expenses. This conclusion based on the statutory language is consistent with two of the main purposes of CERCLA— prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party. These purposes would be undermined if a non-polluter (such as GE) were forced to absorb the litigation costs of recovering its response costs from the polluter. The litigation costs could easily approach or even exceed the response costs, thereby serving as a disincentive to clean the site. (citations omitted)

920 F.2d at 1422. Two district courts have reached the same result with similar reasoning. *Pease & Curren Refining, Inc. v. Spectrolab, Inc.*, 744 F.Supp. 945 (C.D.Cal. 1990); *Shapiro v. Alexanderson*, 741 F.Supp. 472, 480 (S.D.N.Y.1990).

Other district courts have held that attorneys' fees are not recoverable under CERCLA. *United States v. Hardage*, 750 F.Supp. 1460, 1511 (W.D.Okla.1990); *Fallowfield Development Corp. v. Strunk*, 1990 WESTLAW 52745, *5–*6 (E.D.Pa. 1990); *Mesiti v. Microdot, Inc.*, 739 F.Supp. 57, 62–63 (D.N.H.1990); *Regan v. Cherry Corp.*, 706 F.Supp. 145, 149 (D.R.I.1989); *T & E Indus., Inc. v. Safety Light Corp.*, 680 F.Supp. 696, 708 (D.N.J.1988); *BCW Associates v. Occidental Chemical Corp.*, 1988 WESTLAW 102641, *23 (E.D.Pa.1988); *Hemingway Transportation, Inc. v. Khan*, 108 B.R. 378, 383 (Bkrtcy.D.Mass. 1989). One of the leading cases for this position is *T & E Indus., Inc. v. Safety*

*Light Corp., supra.* Like the facts in *Litton*, T & E unknowingly purchased property with a hazardous waste site. T & E sued Safety Light, a successor to the original polluter, for both its cleanup costs and attorneys' fees as response costs. The court held that CERCLA generally intended to distinguish between costs recoverable to the government and those recoverable by private entities. *Id.* at 707–8. The court found that while the government could obtain attorneys' fees pursuant to § 104(b), private parties had no comparable entitlement. *Id.* Without further explanation, the court rejected the plaintiff's argument that attorneys' fees for bringing the action were recoverable as enforcement activities related to response expenditures on the basis that private parties cannot incur enforcement costs. *Id.* at 708, n. 13.

Another court rejecting attorneys' fees in cost-recovery actions emphasized the legislative history related to the amendment to the Act which added the "enforcement activities thereto" language. *Fallowfield Development Corp. v. Strunk*, 1990 WESTLAW 52745 (E.D.Pa.1990). The Committee on Energy and Commerce had made the following comments on § 101:

> The section also modifies the definition of "response action" to include related enforcement activities. The change will confirm the EPA's authority to recover costs for enforcement actions taken against responsible parties.

H.R.Rep. No. 253, 99th Cong., 1st sess., pt. 1, at 66–67 (1985), reprinted in 1986 U.S. Code Cong. & Admin.News, 2835, 2848–49. From that language the court concluded that when Congress expanded the definition of response costs to include enforcement costs, Congress did not intend for private parties to obtain attorneys' fees as part of a cost recovery action. *Fallowfield*, 1990 WESTLAW 52745, at *6.

In this case, the Government contends that CERCLA's statutory scheme, taken as a whole, evidences a Congressional intent to provide attorneys' fees for the Government but not for private parties. First, the Government points out that CERCLA does not explicitly authorize attorneys' fees as

part of a § 107 cost-recovery claim. In contrast, Congress explicitly provided for attorneys' fees for citizen's suits, 42 U.S.C. § 9659, and for response actions by the United States, 42 U.S.C. § 9604. The Government argues, therefore, that when Congress wanted to provide for attorneys' fees, it did so explicitly, and the failure to make such a provision in § 107 demonstrates the Congressional intent to deny attorneys' fees under Section 107.

The Government further asserts that the statute, taken as a whole, shows that only the Government may bring an "enforcement action". The Government asserts that an enforcement action is a an action to compel compliance with CERCLA. The United States may bring such an action under § 104 or § 106 (and private citizens under § 310), but private parties may only bring contribution actions under § 113 or cost recovery claims under § 107. The Government also relies upon the two sentences of the legislative history cited by the *Fallowfield* court. Thus the Government contends that even if the court rejects the Government's argument that attorneys' fees are unavailable because of a lack of explicit statutory authority under § 107, attorneys' fees are nevertheless unrecoverable because a private party cannot incur costs of enforcement activities.

 The court rejects both of the Government's contentions. As an initial matter, "CERCLA is essentially a remedial statute designed by Congress to protect and preserve public health and the environment, courts are obligated to construe its provisions liberally to avoid frustration of the beneficial legislative purposes in the absence of a specific congressional intent otherwise." *Wilshire Westwood Assoc. v. Atlantic Richfield*, 881 F.2d 801, 804 (9th Cir.1989) (quoting *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir.1986)). "Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the cost and responsibility for remedying the harmful conditions they created." *Pinole Point Properties v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 287 (N.D.Cal.

1984) (quoting *United States v. Reilly Tar & Chemical Corp.*, 546 F.Supp. 1100 (D.Minn.1982). Thus, absent specific Congressional intent to the contrary, CERCLA should be interpreted liberally to permit recovery associated with identifying of potentially responsible parties and forcing those responsible parties to share their fair portion of the cleanup of a hazardous waste site.

The court must reject the Government's "express statutory authorization" argument. *Alyeska, supra*, stood for the proposition that the federal courts may not award attorneys' fees in the complete absence of any statutory authority. 421 U.S. at 269, 95 S.Ct. at 1627. In that case the Court of Appeals had found that the case did not fit into any of the recognized exceptions to the "American rule" but nevertheless awarded attorneys' fees because the litigation had been beneficial to the public and had ensured that the governmental system functioned properly. *Id.* at 245, 95 S.Ct. at 1615–16. The Supreme Court held that a judicially created rule awarding attorneys' fees was improper and therefore reversed the decision by the Court of Appeals. *Id.* at 269–70, 95 S.Ct. at 1627–28.

Unlike *Alyeska*, the plaintiff in this case points to a statutory provision which entitles the recovery of all necessary response costs. The statute defines response costs as including "enforcement activities". 42 U.S.C. § 9601(25). Thus, the issue for the court is only whether a private party can incur enforcement costs.

The court finds that a private party may incur enforcement costs, and, therefore, may recover attorneys' fees for bringing a cost recovery action under § 107. Congress drafted Section 101(25) to establish the scope of response costs recoverable throughout CERCLA; thus, the definition of response, on its face, applies to both the Government and private parties. Congress failed to restrict "enforcement activities" in that definition to governmental actions.

Although the court acknowledges the force of the Government's position that the statutory scheme implies that enforcement activities are those actions taken by the

EPA to require compliance with CERCLA, the court must construe the provisions of § 107 and § 101(25) liberally to achieve the overall objectives of the statute.[2] The court further finds that the cases cited, infra p. 869–870, are more persuasive. Read as a whole, the statute clearly meant for those responsible for dumping chemical wastes to pay for the cleanup of those wastes. If the court narrowly read the statute as the Government suggests, then even innocent purchasers of property who clean up hazardous wastes and subsequently seek recovery from the responsible parties would be unable to recover the entirety of the expenses incurred in holding the responsible parties accountable for their pollution.[3] Accordingly, the court concludes that enforcement costs must be read broadly, and thus includes therein attorneys' fees for making responsible parties share necessary response costs.

## C. PRP Search Costs

Key Tronic also seeks to recover the costs of its executive, outside investigators' fees, and attorneys' fees relating to the search for potentially responsible parties. The Government acknowledges that PRP search costs are recoverable when sought by the EPA when enforcing CERCLA. Both parties acknowledge that the case law does not specifically discuss a private party's PRP search costs.

▇ The court finds its holding on enforcement activities and expenses recoverable thereunder to be applicable. Having held that the enforcement cost language of

CERCLA must be read broadly, this court concludes that the search for responsible parties is an enforcement activity within the meaning of CERCLA.[4] For the reasons articulated by the court in permitting the recovery of the attorneys' fees in bringing this legal action, the court must find the PRP search costs to be recoverable.

## D. Costs Incurred by Key Tronic's Attorneys and Executive in Negotiation of the Consent Decree

Courts have held that consultant and legal fees incurred in the investigation of a hazardous waste site are recoverable as necessary response costs. *International Clinical Laboratories, Inc. v. Stevens,* 1990 WESTLAW 43971, 1990 U.S. Dist. LEXIS 3685 (E.D.N.Y.1990); *BCW Associates v. Occidental Chem. Corp.,* 1988 WESTLAW 102641, 1988 U.S. Dist. LEXIS 11275.

▇ The court finds that the attorneys' fees and executive's opportunity costs in negotiating Key Tronic's consent decree are necessary response costs in cleaning up the Colbert landfill. The court cannot accept the Government's argument that such costs are not recoverable solely because attorneys (as opposed to engineers) carried out work necessary to solving the problems at Colbert.[5] The court further notes that the Government does not contend that these fees are recoverable only as "enforcement activities." Because these expenses were necessary response costs, the

---

2. The court notes that the two sentences of legislative history cited by the Government fail to make any reference to private parties. The court cannot conclude from these statements that Congress intended to deny recovery to private parties for enforcement activities.

3. The court is not persuaded that *Litton* should be read as a clean-hands case. If enforcement costs were read to cover only the Government's expenses in compelling compliance with the statute, then persons with clean hands who bring cost recovery actions would also be denied a statutory mechanism to recover their attorneys' fees. The court cannot find a statutory basis to justify an analytical distinction between those who have clean hands and bring a cost recovery action and those who do not.

4. Indeed, Key Tronic asserts, and the Government does not refute, that Key Tronic's efforts in identifying responsible parties and establishing the Air Force's disposal of wastes at Colbert resulted in the EPA's action against the Air Force.

5. The Government did not raise the issue of whether Key Tronic might have been foreclosed from recovering attorneys' fees related to obtaining a consent decree for the same reasons that Key Tronic may not seek contribution for the $4.2 million liability of the consent decree. The Government instead has defended solely on the basis that Key Tronic's attorneys' fees are not response costs.

court finds that these costs are recoverable under CERCLA.

## MOTION TO STAY

The United States moves the court stay its decision on the quantum of damages. The parties having represented that they will submit a stipulation as to the amount of damages, the defendant's motion IS HEREBY DENIED AS MOOT. The parties shall submit their stipulation to the court within 30 days of the entry of this order.

IT IS HEREBY ORDERED:

1. Defendant United States' Motion for Enlargement of Time (Ct.Rec. 107) IS HEREBY GRANTED.

2. The plaintiff's Motion For Summary Judgment Re: Contribution Claim (Ct.Rec. 99) against defendant Alumax IS HEREBY DENIED AS MOOT.

3. The plaintiff's Motion For Summary Judgment that Alumax is a Covered Person (Ct.Rec. 103) IS HEREBY DENIED AS MOOT.

4. The plaintiff's Motion for Partial Summary Judgment that Response Costs are Recoverable (Ct.Rec. 94) IS HEREBY GRANTED as herein stated. Within 30 days of the entry of this order, the plaintiff and defendant United States shall submit their stipulation as to the quantum of liability.

5. Defendant United States' Motion to Stay (Ct.Rec. 113) IS HEREBY DENIED AS MOOT.

IT IS SO ORDERED.