USCA1 Opinion

 

 September 12, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-2253 UNITED TECHNOLOGIES CORPORATION, ET AL., Plaintiffs, Appellants, v. BROWNING-FERRIS INDUSTRIES, INC., ET AL., Defendants, Appellees. _________________________ ERRATA SHEET ERRATA SHEET The opinion of the court issued on August 19, 1994 is corrected as follows: On page 4, last line delete citation On page 5, line 11 change "in March, 1986" to "no later than early 1987" On page 5, lines 16, 17, 18 change sentence beginning with "Here, . . . ." to "Here, the court entered the consent decree in March of 1986 and remedial construction apparently started at the Site within one year of that event." On page 19 line 13 change "five" to "six" For copy of appendix, please contact Clerk's Office. UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-2253 UNITED TECHNOLOGIES CORPORATION, ET AL., Plaintiffs, Appellants, v. BROWNING-FERRIS INDUSTRIES, INC., ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ _________________________ Before Breyer,* Chief Judge, ___________ Torruella and Selya, Circuit Judges. ______________ _________________________ Peter Buscemi, with whom Howard T. Weir, Thomas J. O'Brien, _____________ _______________ _________________ Ellen B. Steen, Morgan, Lewis & Bockius, Jeffrey A. Thaler, and ______________ ________________________ __________________ Berman & Simmons, P.A. were on brief, for appellants. ______________________ Robert L. Gulley, with whom Samuel B. Boxerman, Sidley & _________________ __________________ ________ Austin, John A. Ciraldo, and Perkins, Thompson, Hinckley & Keddy ______ _______________ ___________________________________ were on brief, for appellee Browning-Ferris Industries, Inc. Arlyn H. Weeks and Conley, Haley & O'Neil on brief for ________________ ________________________ appellee Central Maine Power Co. Edward E. Shea, Clayton A. Prugh, Elizabeth A. Bryson, ________________ __________________ ____________________ Windels, Marx, Davies & Ives, Nicholas M. Lanzilotta, and Colby & ____________________________ ______________________ _______ Lanzilotta on brief for appellee Carleton Woolen Mills, Inc. __________ _________________________ August 19, 1994 _________________________ _______________ *Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. 46(d). SELYA, Circuit Judge. This appeal demands that we SELYA, Circuit Judge. _____________ clarify the relationship between cost recovery actions and contribution actions under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. 9601-9675 (1987), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), Pub. L. No. 99-499, 101 et __ seq., 100 Stat. 1613 (1986). Having completed our task, we ____ affirm the district court's entry of summary judgment terminating appellants' action as time-barred. I. BACKGROUND I. BACKGROUND The essential facts are not in dispute. In 1981, after discovering hazardous substance contaminants at a landfill in Winthrop, Maine (the Site), the United States Environmental Protection Agency (EPA) placed the Site on its national priority list. The EPA and Maine thereafter undertook a concurrent investigation and determined that Inmont Corporation, since acquired by plaintiff-appellant United Technologies Corporation (UTC),1 had conducted contamination producing activities at the Site from 1950 to 1975. In 1982, the EPA notified Inmont that it was liable, under CERCLA, to clean up the Site. Several years of dilly- dallying eventually gave way to negotiations among Inmont and ____________________ 1UTC acquired Inmont in 1979 and transferred its ownership to BASF Corporation (a UTC subsidiary) in 1985. Inmont then merged into BASF. UTC and BASF brought this suit jointly, and both appear here as appellants. 4 certain other potentially responsible parties (PRPs),2 on one hand, and the appropriate federal and state officials, on the second hand. The parties reached a tentative agreement and prepared a consent decree. On January 29, 1986, the United States filed a civil action against Inmont and others under CERCLA, with a view toward securing a judicial imprimatur on the proposed decree. The suit alleged that the named defendants were jointly and severally liable for the costs the United States had incurred, and would continue to absorb, in responding to releases and threatened releases at the Site. The district court promptly consolidated EPA's case with a nearly identical case that Maine had filed against the same defendants; and, on March 23, 1986, the court entered the consent decree. Pursuant thereto, appellants agreed to undertake and complete corrective work at the Site in accordance with a plan for remedial action. The cleanup proved to be expensive: appellants make the uncontradicted claim that remedial work cost in excess of $13,000,000 to date, and that work yet to be done likely will absorb an additional $20,000,000 or more. Appellants also agreed to reimburse, and have since paid, the federal and state sovereigns $475,000 for costs previously incurred with respect to scouring the Site. On October 16, 1992, appellants brought suit in federal district court against several defendants, including Browning- ____________________ 2The other PRPs were the Town of Winthrop, Everett Savage, and Glenda Savage. None of them are involved in this appeal. 5 Ferris Industries, Inc. (Browning).3 In their complaint, appellants posited claims under both federal and state law. They alleged that the defendants were wholly or partially responsible for contamination of the Site and sought three separate kinds of relief, namely, (1) recovery of cleanup costs paid directly by them (hereinafter "first-instance costs"); (2) recovery of monies paid by them to reimburse the EPA and Maine for cleanup costs (hereinafter "reimbursed costs"); and (3) a declaration of rights in respect to liability for future response costs. Browning moved for summary judgment, hypothesizing that CERCLA's statute of limitations barred appellants' federal claims, and that the pendent state claims should, therefore, be dismissed for lack of jurisdiction. Appellants voluntarily dismissed their claims regarding the reimbursed costs (apparently believing such claims to constitute time-barred contribution claims), but otherwise opposed the motion. A magistrate judge recommended granting brevis disposition with respect to ______ appellants' remaining claims. The district court agreed. See ___ 1993 WL 66007 (D. Me. May 27, 1993). This appeal followed.4 ____________________ 3The other named defendants included Carleton Woolen Mills, Inc., Central Maine Power Company, Community Service Telephone Co., Progressive Iron Works, Inc., and Quaker Lace Company. Early in the proceedings, appellants voluntarily dismissed their action against Quaker Lace. The remaining defendants appear here as appellees. 4When Browning sought summary judgment, all the remaining defendants followed suit. They ultimately achieved an identical result. This proceeding embraces the district court's grant of summary judgment in favor of all defendants. For ease in reference we treat the appeal as if Browning alone were the appellee, but our resolution of it applies with full force to all 6 II. ANALYSIS II. ANALYSIS CERCLA and SARA together create two different kinds of legal actions by which parties can recoup some or all of the costs associated with cleanups: cost recovery actions, see 42 ___ U.S.C. 9607(a), and contribution actions, see id. 9613(f)(1). ___ ___ Cost recovery actions are subject to a six-year statute of limitations, see id. 9613(g)(2), while contribution actions ___ ___ must be brought within half that time, see id. 9613(g)(3).5 ___ ___ In this case appellants' cause of action, no matter how it is visualized, accrued no later than early 1987. Compare id. _______ ___ 9613(g)(2)(B) (providing that the trigger date for a cost recovery action is fixed by the "initiation of physical on-site construction of the remedial action") with id. 9613(g)(3)(B) __ (providing that the accrual period for contribution actions begins when a "judicially approved settlement" is entered). Here, the court entered the consent decree in March of 1986 and remedial construction started at the Site in the same month that the court entered the consent decree, namely, March of 1986. Appellants brought suit roughly five and one-half years thereafter. Thus, the sole question presented on appeal is whether appellants' action is an action for cost recovery or one for contribution. If appellants' action qualifies under the former rubric, it is timely; but, if it is properly classified ____________________ the other appellees. 5We set out the text of the centrally relevant statutes, 42 U.S.C. 9607(a), 9613(f) & 9613(g), in an appendix hereto. 7 under the latter rubric, it comes too late. Because the issue on appeal turns on the correct interpretation of the relevant statutory provisions, we exercise de novo review. See United States v. Gifford, 17 F.3d 462, 472 __ ____ ___ _____________ _______ (1st Cir. 1994) (holding that questions of law engender plenary appellate review); Liberty Mut. Ins. Co. v. Commercial Union Ins. _____________________ _____________________ Co., 978 F.2d 750, 757 (1st Cir. 1992) (same). ___ A. The Contours of Contribution. A. The Contours of Contribution. ____________________________ Four portions of the statute are of immediately obvious relevance. The only one of the four found in the original CERCLA legislation is 42 U.S.C. 9607(a)(4). This proviso makes enumerated parties "liable for . . . all costs of removal or remedial action incurred by [government entities and] any other necessary costs of response incurred by any other person consistent with the national contingency plan." The other three provisions originated in SARA and are all codified within 42 U.S.C. 9613. Under 42 U.S.C. 9613(f)(1), "[a]ny person may seek contribution from any other person who is liable or potentially liable" for response costs. The same section contains two statutes of limitations. One provides that an action for cost recovery must be commenced within six years of the accrual date.6 Id. 9613(g)(2). The other provides that ___ "[n]o action for contribution for any response costs or damages may be commenced more than 3 years after . . . the date of . . . ____________________ 6This subsection speaks in terms "of the costs referred to in [section 9607]." 42 U.S.C. 9613(g)(2). 8 entry of a judicially approved settlement with respect to such costs or damages." Id. 9613(g)(3). ___ It is apodictic that our first recourse must be to the statute's text and structure. See United States v. O'Neil, ___ _____________ ______ 11 F.3d 292, 295 (1st Cir. 1993); United States v. Charles George _____________ ______________ Trucking Co., 823 F.2d 685, 688 (1st Cir. 1987). Following this ____________ path, it is evident that CERCLA differentiates between "action[s] for recovery of . . . costs" and "action[s] for contribution." Compare 42 U.S.C. 9613(g)(2) with id. 9613(g)(3). Although _______ ____ ___ Congress did not explicitly plot the boundary that divides these two types of actions, we are not wholly without guidance. Under accepted canons of construction, legal terms used in framing a statute are ordinarily presumed to have been intended to convey their customary legal meaning. See Bradley v. United States, 410 ___ _______ _____________ U.S. 605, 609 (1973) (holding that "the law uses familiar legal expressions in their familiar legal sense") (citation omitted); MCA, Inc. v. Wilson, 677 F.2d 180, 186 (2d Cir. 1981) (similar); _________ ______ see also 2A Norman J. Singer, Sutherland Stat. Const. 47.30, at ___ ____ _______________________ 262 (5th ed. 1992). This precept has special force when, as now, there is no persuasive evidence that Congress aspired to use a particular legal term in some unusual or unorthodox sense. This canon measurably assists our effort to ascribe meaning to the word "contribution." Contribution is a standard legal term that enjoys a stable, well-known denotation. It refers to a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them 9 has been compelled to make." Akzo Coatings, Inc. v. Aigner ____________________ ______ Corp., ___ F.3d ___, ___ (7th Cir. 1994) [1994 U.S. App. LEXIS _____ 17028 at *5]; accord Northwest Airlines, Inc. v. Transport ______ _________________________ _________ Workers Union, 451 U.S. 77, 87-88 (1981); In re "Agent Orange" ______________ _____________________ Prod. Liab. Litig., 818 F.2d 204, 207 (2d Cir. 1987); see also ___________________ ___ ____ Black's Law Dictionary 399 (6th ed. 1990) (defining contribution ______________________ as a right "of one who has discharged a common liability to recover of another also liable, the aliquot portion which he ought to pay or bear").7 Accordingly, absent evidence that Congress had a different, more exotic definition in mind, we are inclined, in parsing 42 U.S.C. 9613, to give the word "contribution" its generally accepted legal meaning. The relevant external considerations counsel in favor of this usage and, thus, solidify our inclination. Perhaps most important, ascribing a traditional meaning to the term "contribution" fits both CERCLA's language and its structure. Under such a reading, the two statutes of limitations complement each other and together exhaust the types of actions that might be brought to recoup response costs: the shorter prescriptive period, contained in 42 U.S.C. 9613(g)(3), governs actions brought by liable parties during or following a civil action ____________________ 7Most states have adopted contribution provisions that operate along substantially similar lexicographical lines. See ___ Northwest Airlines, 451 U.S. at 87 n.17 (collecting exemplars). __________________ This is an important datum because CERCLA's legislative history evinces an intent that courts establish the scope and nature of CERCLA liability consistent with evolving principles of law. See, e.g., 126 Cong. Rec. 30,932 (1980) (statement of Sen. ___ ____ Randolph); 126 Cong. Rec. 31, 965 (1980) (statement of Rep. Florio). 10 under 42 U.S.C. 9606-9607(a), while the longer statute of limitations, contained in 42 U.S.C. 9613(g)(2), addresses actions brought by innocent parties that have undertaken cleanups (say, the federal, state or local government).8 This reading fits especially well with the language of 42 U.S.C. 9613(g)(2), which concerns actions for "recovery of the costs." That phrase, reiterative of the subsection heading "Actions for recovery of costs," suggests full recovery; and it is sensible to assume that Congress intended only innocent parties not parties who were themselves liable to be permitted to recoup the whole of their expenditures. By contrast, 42 U.S.C. 9613(g)(3) allows a "non-innocent" party (i.e., a party who himself is liable) only to seek recoupment of ____ that portion of his expenditures which exceeds his pro rata share ___ ____ of the overall liability in other words, to seek contribution ____________________ 8It is possible that, although falling outside the statutory parameters established for an express cause of action for contribution, see 42 U.S.C. 9613(f)(1), a PRP who spontaneously ___ initiates a cleanup without governmental prodding might be able to pursue an implied right of action for contribution under 42 U.S.C. 9607(c). See Key Tronic Corp. v. United States, 114 S. ___ ________________ ______________ Ct. 1960, 1966 (1994) (explaining that CERCLA now "expressly authorizes a cause of action for contribution in [ 9613] and impliedly authorizes a similar and somewhat overlapping remedy in [ 9607]"); cf. In re Hemingway Transp., Inc., 993 F.2d 915, 931 __ _____________________________ (1st Cir.) (stating in dictum that "in the event the private- action plaintiff itself is potentially `liable' to the EPA for response costs, and thus is akin to a joint `tortfeasor,' section 9607(a)(4)(B) serves as the pre-enforcement analog to the ___ ___________ `impleader' contribution action permitted under section 9613(f)"), cert. denied, 114 S. Ct. 303 (1993). If, indeed, the _____ ______ law allows such an implied right of action for contribution to be maintained a matter on which we take no view it is unclear to us whether such a cause of action would be subject to the three- year or the six-year prescriptive period. Because this appeal does not pose that question, we leave it for another day. 11 rather than complete indemnity. The statutory language thus suggests that cost recovery and contribution actions are distinct and do not overlap. The pre-SARA caselaw and SARA's legislative history dovetail to furnish strong support for imputing a traditional meaning to the term "contribution" as it appears in 42 U.S.C. 9613. As originally written, CERCLA gave the EPA several remedial choices. For example, it could (1) clean up a contaminated site and then sue to recover its response costs, see ___ id. 9607(a)(4), (2) endeavor to compel a PRP to perform a ___ cleanup by administrative order, or, if the PRP proved recalcitrant, by obtaining a judicial decree, see id. 9606, or ___ ___ (3) negotiate a settlement, see id. 9622. Despite this array ___ ___ of weapons, however, CERCLA was and still is silent as to the extent of a particular PRP's liability. Judges abhor vacuums; and the courts filled this lacuna in the statute, reading CERCLA as imposing joint and several liability on the part of all responsible parties to reimburse the government for cleanup expenses and to pay response costs. See, e.g., In re Hemingway ___ ____ _______________ Transp., Inc., 993 F.2d 915, 921 (1st Cir.), cert. denied, 114 S. _____________ _____ ______ Ct. 303 (1993); O'Neil v. Picillo, 883 F.2d 176, 178 (1st Cir. ______ _______ 1989), cert. denied, 493 U.S. 1071 (1990). _____ ______ Notwithstanding the presumed existence of joint and several liability, there was much uncertainty prior to SARA's passage as to whether a responsible party could recover from other PRPs the portion of its cleanup costs that exceeded its pro ___ 12 rata share. See, e.g., United States v. New Castle County, 642 ____ ___ ____ _____________ _________________ F. Supp. 1258, 1262 (D. Del. 1986) (noting uncertainty). Although most courts ultimately ruled that section 9607 conferred an implied right of action for contribution in favor of a PRP that paid more than its ratable share, see, e.g., O'Neil, 883 ___ ____ ______ F.2d at 179; Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454, ____________ __________________ 1457 n.3 (9th Cir. 1986), the situation was clouded by the Court's refusal to imply rights of action under other statutes in the absence of an express direction from Congress, see, e.g., ___ ____ Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, ___________________ _________________________ 639-40 (1981) (declining to imply right of action for contribution under the antitrust laws); Northwest Airlines, 451 __________________ U.S. at 91-95 (finding no implied right to contribution under either the Equal Pay Act of 1963 or Title VII of the Civil Rights Act of 1964). This background brings the origins of SARA into sharp focus. A principal goal of the new section 9613 was to "clarif[y] and confirm[] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances." S. Rep. No. 11, 99th Cong., 1st Sess. 44 (1985), reprinted in 2 Legislative _________ __ ___________ History of the Superfund Amendments and Reauthorization Act of _________________________________________________________________ 1986, 636, Sp. Print 101-120 (101st Cong., 2d Sess.) (1990); see ____ ___ also 131 Cong. Rec. 24,450 (1985) (statement of Sen. Stafford) ____ 13 (predicting that section 9613 would "remove[] any doubt as to the right of contribution"). Of paramount significance for present purposes is that Congress, in enacting SARA, sought to codify the case law, see O'Neil, 883 F.2d at 179 and the cases decided to ___ ______ that point, without exception, employed the legal term "contribution" in its traditional sense to cover an action by one liable party against another liable party. See, e.g., Bulk ___ ____ ____ Distrib. Ctrs., Inc. v. Monsanto Co., 589 F. Supp. 1437, 1442-44 _____________________ ____________ (S.D. Fla. 1984); Jones v. Inmont Corp., 584 F. Supp. 1425, 1428- _____ ____________ 29 (S. D. Ohio 1984). Taken in the aggregate, this impressive collection of signposts canons of construction, other CERCLA language, the statute's structure, the state of the case law antedating SARA's passage, and SARA's legislative history point squarely to a conclusion that Congress used the word "contribution" in the conventional sense, and fully intended courts to give the word its customary meaning. The authorities so hold. See Akzo ___ ____ Coatings, ___ F.3d at ___ [1994 U.S. App. LEXIS 17028 at *7]; ________ Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 672 (5th Cir. 1989); _____________ ____________ Avnet, Inc. v. Allied-Signal, Inc., 825 F. Supp. 1132, 1137-38 ___________ ___________________ (D.R.I. 1992); Transtech Indus., Inc. v. A & Z Septic Clean, 798 _______________________ __________________ F. Supp. 1079, 1086 (D.N.J. 1992), appeal dism'd, 5 F.3d 51 (3d ______ ______ Cir. 1993), cert. denied, 114 S. Ct. 2692 (1994); see also Key _____ ______ ___ ____ ___ Tronic Corp. v. United States, 114 S. Ct. 1960, 1965-66 (1994) _____________ _____________ (observing that section 9613(f) expressly created a cause of action permitting a responsible party to seek contribution from 14 other PRPs). Applying this legal regime to the facts at hand, and bearing in mind that appellants are by their own admission liable parties, their claim against Browning must be classified as an action for contribution. Hence, unless the claim can otherwise be saved, it will fall prey to the three-year bar of 42 U.S.C. 9613(g)(3). B. The Statutory Interface. B. The Statutory Interface. _______________________ Appellants argue that, notwithstanding section 9613(f)(3), the broad, unqualified language to the effect that responsible parties shall be liable to "any other person," 42 U.S.C. 9607(a)(4), provides an alternative avenue for the maintenance of their suit. If this is so, appellants add, the six-year statute of limitations found in section 9613(g)(2), pertaining to actions for "recovery of the costs referred to in [ ] 9607" must govern in this instance. At face value, this expansive reading of section 9607 is untenable; carried to its logical extreme, such a reading would completely swallow section 9613(g)(3)'s three-year statute of limitations associated with actions for contribution. Since courts must strive to give effect to each subsection contained in a statute, indeed, to give effect to each word and phrase, see ___ United States v. Nordic Village, Inc., 112 S. Ct. 1011, 1015 ______________ _____________________ (1992); United States v. Ven-Fuel, Inc., 758 F.2d 741, 751-52 _____________ _______________ (1st Cir. 1985), we refuse to follow a course that ineluctably produces judicial nullification of an entire SARA subsection. 15 Recognizing this looming obstacle, appellants attempt to skirt it by lowering their sights and, thus, preserving some semblance of utility for 42 U.S.C. 9613(g)(3). In this vein, they focus on the phrase "incurred by," as used in 42 U.S.C. 9607(a), and asseverate, based on this language, that section 9607(a) only covers actions to recoup cleanup costs directly paid for (i.e., "incurred") by a responsible party (what we have ____ termed first-instance costs, see supra p. 4). If this ___ _____ construction were adopted, then an action for recoupment of sums paid by a responsible party to a government agency to compensate it, pursuant to a settlement or judgment, for the funds it expended in cleaning up a site (what we have termed reimbursed costs, see supra p. 4), would lie under section 9613(f), but not ___ _____ under section 9607(a). Hence, section 9613(g)(3) would retain some measure of vitality, for an action by a responsible party against other PRPs to recover that portion of the reimbursed costs paid by the former in excess of its pro rata share would ___ ____ constitute a contribution claim, subject to the three-year prescriptive period.9 We are not persuaded by this sleight of hand. For one thing, appellants' reading depends on excerpting phrases from section 9607(a) without due regard for the statute's overall ____________________ 9As an example, appellants suggest that an attempt to recover some part of the $475,000 payment they made to compensate the EPA and Maine for the latters' cleanup expenditures would be subject to the three-year limitations period, while an attempt to recover a portion of the response costs ($13,000,000 to date) paid directly by appellants could be brought under section 9607(a) and come within the six-year limitations period. 16 content. The full text of the relevant subsection, reproduced in the appendix infra, makes selected parties liable for "any other _____ necessary costs of response incurred by any other person." This unqualifiedly broad language comfortably accommodates all response costs incurred by a private party, not just first- instance costs. In a nutshell, accepting appellants' position would require us to read section 9607's language ("any other necessary costs") as containing an implicit qualification: "except for monies paid to reimburse government entities' cleanup costs." There is simply no rhyme or reason for reading that condition into what appears on its face to be a straightforward statutory directive. See, e.g., CIA v. Sims, 471 U.S. 159, 169- ___ ____ ___ ____ 70 (1985) (refusing to read limitations into broad and unconditional statutory language). Under the reading that we adopt, by contrast, the unqualified language "any other necessary costs" remains as Congress wrote it, that is, without qualification.10 We think that this reading is preferable. For another thing, appellants' tracing of the statutory interface is wholly dependent on an unusually cramped reading of the term "contribution." Under appellants' theory, the term refers only to reimbursed costs. This artificial circumscription entirely omits from the sweep of section 9613 what might be called "traditional" contribution actions. We know of no other court that has given such an odd definition to the term ____________________ 10As discussed above, see supra p. 11, 42 U.S.C. ___ _____ 9613(f)(1) explicitly confirms the cause of action for contribution that is implicit in the language of 9607(a). 17 "contribution" in this or any other context; and, though we recognize that we are not bound to interpret the word as it is defined by state law, see 42 U.S.C. 9613(f)(1) (providing that ___ claims for contribution "shall be governed by Federal law"), the responsibility to develop federal common law is not a license to override policy choices made by the Congress or to create newfangled definitions for no better reason than that they suit a party's convenience or strike a judge's fancy. The meaning to be attributed to terms governed by federal law must, at the very least, comport with the statutory scheme in which such terms appear, and, wherever possible, effectuate discernible congressional intent. Put bluntly, a court cannot rewrite a statute by the simple expedient of calling a camel a horse, overlooking obvious humps. Appellants' suggested interpretation fails this commonsense test on two grounds. First, 42 U.S.C. 9613 itself appears to reject any distinction for the purposes of contribution between first-instance costs and reimbursed costs. After all, subsection 9613(f)(3)(B) authorizes a party to seek contribution "for some or all of the response action or for some or all of the costs of such action . . ." The simple reading of this subsection is that the initial phrase refers to expenses incurred in the course of a liable party's direction of a site's cleanup while the second phrase refers to reimbursement of cleanup costs incurred under the government's hegemony. The legislative history confirms this explanation. In 18 formulating SARA, the Senate Committee on Environment and Public Works viewed what is now section 9613(f) as intended to permit an action for contribution when a party believed that it had "assumed a share of the cleanup or cost that may be greater than its equitable share." S. Rep. No. 11, supra. By like token, the _____ House Committee on Energy and Commerce stated that contribution could be had under section 9613(f) by parties "who settle for all or part of a cleanup or its costs . . ." H.R. Rep. No. 253, pt. 1, 99th Cong., 2d Sess. 80 (1985), reprinted in 1986 U.S.C.C.A.N. _________ __ 2835, 2862. These statements show beyond serious question that the drafters intended contribution, as that term is used in section 9613, to cover parties' disproportionate payments of first-instance costs as well as parties' disproportionate payments of reimbursed costs. Second, appellants' construction emasculates the contribution protection component of CERCLA's settlement framework. CERCLA seeks to provide EPA with the necessary tools to achieve prompt cleanups. See United States v. Cannons ___ ______________ _______ Engineering Corp., 899 F.2d 79, 90-91 (1st Cir. 1990). One such _________________ tool is the ability to foster incentives for timely settlements. See id. To this end, 42 U.S.C. 9613(f)(2) provides that a ___ ___ party who settles with the government "shall not be liable for claims for contribution regarding matters addressed in the settlement." Because only the amount of the settlement, not the pro rata share attributable to the settling party, is subtracted ___ ____ from the aggregate liability of the nonsettling parties, see id., ___ ___ 19 section 9613(f)(2) envisions that nonsettling parties may bear disproportionate liability. This paradigm is not a scrivener's accident. It "was designed to encourage settlements and provide PRPs a measure of finality in return for their willingness to settle." Cannons Engineering, 899 F.2d at 92; see also H.R. Rep. ___________________ ___ ____ No. 253, supra, 1986 U.S.C.C.A.N. at 2862. _____ This mechanism for encouraging settlement would be gutted were courts to share appellants' view of the contribution universe, for subsection 9613(f)(2) then would afford very little protection. Although the subsection still would prevent a settlor from being sued by another responsible party claiming that the first settlor paid less than its ratable share of the _______ government's expenses (what we have termed "reimbursed costs"), _____________________ the statutory shield would not extend beyond that point. Most disturbingly, if a party's direct, first-instance payments are not grist for the contribution mill, but, instead, are to be treated as recovery costs within the purview of section 9607(a), a nonsettling or later-settling PRP would be entitled to bring an action against a responsible party who settled at the earliest practicable moment, but paid less than his ratable share of the aggregate first-instance payments. Exposing early settlors who make first-instance payments to later contribution actions not only would create a needless asymmetry in the treatment of first- instance costs as opposed to reimbursed costs, but also would greatly diminish the incentive for parties to reach early settlements with the government, thereby thwarting Congress's 20 discernible intent.11 This result makes little sense, and, therefore, we reject appellants' tortured construction of the statutory language. III. CONCLUSION III. CONCLUSION The word "contribution" for purposes of 42 U.S.C. 9613(f) should be given its plain meaning. Adapted to an environmental case, it refers to an action by a responsible party to recover from another responsible party that portion of its costs that are in excess of its pro rata share of the aggregate ___ ____ response costs (including both first-instance costs and reimbursed costs). Applying this definition, the instant action clearly qualifies as an action for contribution under section 9613(f)(1). And because CERCLA's text indicates that contribution and cost recovery actions are distinct, non- overlapping anodynes,12 the action had to be commenced within three years of its accrual. See 42 U.S.C. 9163(g)(3). ___ We need go no further. Appellants did not deign to sue until some six and one-half years after entry of the consent ____________________ 11It bears mention that CERCLA's contribution protection provisions also would be undermined if cost recovery actions were deemed to be overlapping with contribution actions. 12Envisioning contribution and cost recovery actions as non- overlapping is perfectly consistent with the Court's recent determination that 42 U.S.C. 9613 and 9707(a) create "similar and somewhat overlapping" actions for contribution. Key Tronic, __________ 114 S. Ct. at 1966. The Key Tronic Court was discussing two ___________ different species of contribution actions and expressed no views anent the relation between contribution and cost recovery actions. 21 decree. Their suit is, therefore, time-barred.13 Affirmed. Affirmed. ________ ____________________ 13The court below reached the same result based on somewhat different reasoning. While its rationale strikes us as problematic, we see little point in tilting at windmills. An appellate court is not chained to the lower court's reasoning, but may affirm the judgment below on any independently sufficient basis made manifest by the record. See Garside v. Osco Drug, ___ _______ __________ Inc., 895 F.2d 46, 49 (1st Cir. 1990); Polyplastics, Inc. v. ____ ___________________ Transconex, Inc., 827 F.2d 859, 860-61 (1st Cir. 1987). Thus, we ________________ endorse the result reached below solely for the reasons stated herein. 22