KEY TRONIC CORP. *v.* UNITED STATES ET AL.

No. 93–376.   Argued March 29, 1994—Decided June 6, 1994

Stevens, J., delivered the opinion of the Court, in which Rehnquist, C. J., and O'Connor, Kennedy, Souter, and Ginsburg, JJ., joined. Scalia, J., filed an opinion dissenting in part, in which Blackmun and Thomas, JJ., joined, *post*, p. 821.

*Mark W. Schneider* argued the cause for petitioner. With him on the briefs were *James R. Moore, Michael Himes*, and *Kathryn L. Tucker.*

*Deputy Solicitor General Wallace* argued the cause for the United States. With him on the briefs were *Solicitor General Days, Acting Assistant Attorney General Schiffer,*

*Ronald J. Mann, Anne S. Almy, David C. Shilton,* and *M. Alice Thurston.**

JUSTICE STEVENS delivered the opinion of the Court.

Petitioner Key Tronic Corporation, one of several parties responsible for contaminating a landfill, brought this action to recover a share of its cleanup costs from other responsible parties. The question presented is whether attorney's fees are "necessary costs of response" within the meaning of § 107(a)(4)(B) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA), 100 Stat. 1613, and therefore recoverable in such an action.

I

During the 1970's Key Tronic and other parties, including the United States Air Force, disposed of liquid chemicals at the Colbert Landfill in eastern Washington State. In 1980 the Washington Department of Ecology (WDOE) determined that the water supply in the surrounding area had been contaminated by these chemicals. Various lawsuits ensued, including formal proceedings against Key Tronic, the Air Force, and other parties.

Two of those proceedings were settled. In one settlement with WDOE and the Environmental Protection Agency (EPA), Key Tronic agreed to contribute $4.2 million to an EPA cleanup fund. In the other, the Air Force agreed to pay the EPA $1.45 million. The EPA subsequently released the Air Force from further liability pursuant to CERCLA § 122(g)(5), 42 U. S. C. § 9622(g)(5), which provides that a

---

*\*Rex E. Lee, Carter G. Phillips, Janet M. Letson, Larry G. Gutterridge,* and *James M. Harris* filed a brief for Atlantic Richfield Co. as *amicus curiae* urging reversal.

*Michael D. Graves* and *Claire V. Eagan* filed a brief for the Sand Springs Superfund PRP Group as *amicus curiae* urging affirmance.

party that has resolved its liability to the United States shall not be liable for contribution claims regarding matters addressed in the settlement.[1]

Key Tronic thereafter brought this action against the United States and other parties seeking to recover part of its $4.2 million commitment to the EPA in a contribution claim under CERCLA § 113(f), 42 U. S. C. § 9613(f), and seeking an additional $1.2 million for response costs that it incurred before the settlements in a cost recovery claim under CERCLA § 107(a)(4)(B), 42 U. S. C. § 9607(a)(4)(B). The $1.2 million included attorney's fees for three types of legal services: (1) the identification of other potentially responsible parties (PRP's), including the Air Force, that were liable for the cleanup; (2) preparation and negotiation of its agreement with the EPA; and (3) the prosecution of this litigation.[2]

The District Court dismissed Key Tronic's $4.2 million contribution claim against the Air Force when Key Tronic conceded that § 122(g)(5) precluded it from recovering any part of the consent decree obligation.[3] Key Tronic's claim for $1.2 million of additional response costs could be pursued under CERCLA § 107(a)(4)(B), 42 U. S. C. § 9607, the court held, because it related to matters not covered by the Air

---

[1] See Administrative Order on Consent and Interagency Agreement ¶ 8, p. 12 (Record, Doc. No. 23, Exh. 1). Paragraph 7(a) of that agreement defines the term "Covered Matters" to include "any and all civil liability for reimbursement of response costs or for injunctive relief pursuant to sections 106 or 107(a) of CERCLA, 42 U. S. C. 9606 or 9607(a), or section 7003 of the Resource Conservation and Recovery Act, as amended, 42 U. S. C. 6973, with regard to the Site."

[2] Key Tronic also sought prejudgment interest against the United States. The District Court awarded such interest, and the Air Force did not appeal that award. Other payments the Air Force made to Key Tronic are not in dispute.

[3] The statutory bar protected only the Air Force from liability. Key Tronic's claim against another defendant, Alumax Fabricated Products, Inc., and Alumax Mill Products, Inc. (collectively Alumax), was deemed moot when the two parties settled. 766 F. Supp. 865, 867–868 (ED Wash. 1991).

Force's settlement with the EPA. 766 F. Supp. 865, 868 (ED Wash. 1991). Section 107(a) provides that responsible parties are liable for "any . . . necessary costs of response incurred by any other person consistent with the national contingency plan."[4] 42 U. S. C. § 9607(a)(4)(B). CERCLA's definitional § 101(25), as amended by SARA, provides that "response" or "respond" "means remove, removal, remedy, and remedial action" and that "all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." 42 U. S. C. § 9601(25). Construing §§ 107 and 101(25) "liberally to achieve the overall objectives of the statute," 766 F. Supp., at 872, the District Court concluded that a private party may incur enforcement costs and that such costs include attorney's fees for bringing a cost recovery action under § 107. *Id.*, at 871. The court went on to decide that attorney's fees encompassed within Key Tronic's PRP search costs also were recoverable as an enforcement activity under CERCLA, *id.*, at 872, and that the costs Key Tronic's attorneys incurred in negotiating the agreement with the EPA were recoverable as necessary response costs under § 107.[5]

The Court of Appeals reversed. 984 F. 2d 1025, 1028 (CA9 1993). Relying on its decision in *Stanton Road Associates v. Lohrey Enterprises,* 984 F. 2d 1015 (CA9 1993), which prohibited a litigant in a private response cost recovery action from obtaining attorney's fees from a party responsible for the pollution, the court held that the District Court lacked authority to award attorney's fees in this case. 984 F. 2d, at 1027. The court concluded that *Stanton Road* likewise precluded an award of attorney's fees for Key Tronic's search

---

[4] The EPA promulgated the national contingency plan as a regulation pursuant to CERCLA § 105, 42 U. S. C. § 9605. It is codified at 40 CFR pt. 300 (1993).

[5] The court indicated that these expenses were necessary response costs within the meaning of § 107(a)(4)(B) regardless of whether they constituted costs of "'enforcement activities'" under § 101(25). 766 F. Supp., at 872.

for other responsible parties and for negotiating the consent decree. "Because Congress has not explicitly authorized private litigants to recover their legal expenses incurred in a private cost recovery action," the District Court's award of attorney's fees could not stand. 984 F. 2d, at 1028. Judge Canby dissented, reasoning that Congress' 1986 amendment of the definition of "response" meant to authorize the recovery of attorney's fees even in private litigants' cost recovery actions. *Ibid.*

Other courts addressing this question have differed over the extent to which attorney's fees are a necessary cost of response under CERCLA. See *General Electric Co.* v. *Litton Industrial Automation Systems, Inc.,* 920 F. 2d 1415 (CA8 1990) (fees recoverable); *Donahey* v. *Bogle,* 987 F. 2d ·1250, 1256 (CA6 1993) (same); *Juniper Development Group* v. *Kahn,* 993 F. 2d 915, 933 (CA1 1993) (litigation fees not recoverable); *FMC Corp.* v. *Aero Industries, Inc.,* 998 F. 2d 842 (CA10 1993) (only nonlitigation fees may be recoverable). We granted certiorari to resolve the conflict. 510 U. S. 1023 (1993).

## II

As its name implies, CERCLA is a comprehensive statute that grants the President broad power to command government agencies and private parties to clean up hazardous waste sites. Sections 104 and 106 provide the framework for federal abatement and enforcement actions that the President, the EPA as his delegated agent, or the Attorney General initiates. 42 U. S. C. §§ 9604, 9606. These actions typically require private parties to incur substantial costs in removing hazardous wastes and responding to hazardous conditions. Section 107 sets forth the scope of the liabilities that may be imposed on private parties and the defenses that they may assert. 42 U. S. C. § 9607.

Our cases establish that attorney's fees generally are not a recoverable cost of litigation "absent explicit congressional authorization." *Runyon* v. *McCrary,* 427 U. S. 160, 185

(1976) (citing *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 247 (1975)). Recognition of the availability of attorney's fees therefore requires a determination that "Congress intended to set aside this longstanding American rule of law." *Runyon,* 427 U. S., at 185–186. Neither CERCLA § 107, the liabilities and defenses provision, nor § 113, which authorizes contribution claims, expressly mentions the recovery of attorney's fees. The absence of specific reference to attorney's fees is not dispositive if the statute otherwise evinces an intent to provide for such fees. The Eighth Circuit, for example, found "a sufficient degree of explicitness" in CERCLA's references to "necessary costs of response" and "enforcement activities" to warrant the award of attorney's fees and expenses.[6] Mere "generalized commands," however, will not suffice to authorize such fees. *Id.,* at 186.

The three components of Key Tronic's claim for attorney's fees raise somewhat different issues. We first consider whether the fees for prosecuting this action against the Air Force are recoverable under CERCLA. That depends, again, upon whether the "enforcement activities" included in § 101(25)'s definition of "response" encompass a private party's action to recover cleanup costs from other PRP's such

---

[6] See *General Electric Co.* v. *Litton Industrial Automation Systems, Inc.,* 920 F. 2d 1415, 1421–1422 (1990). After setting out the relevant language of §§ 107(a)(4)(B) and 101(25), the court concluded that a private party cost-recovery action is an enforcement activity within the meaning of the statute, that attorney's fees "necessarily are incurred in this kind of enforcement activity," and that "it would strain the statutory language to the breaking point to read them out of the 'necessary costs' that section 9607(a)(4)(B) allows private parties to recover." *Ibid.* The court's subsequent conclusion that CERCLA authorizes private parties to recover attorney's fees was "based on the statutory language" and was "consistent with two of the main purposes of CERCLA—prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party." *Id.,* at 1422.

that the attorney's fees associated with that action are then "necessary costs of response" within § 107(a)(4)(B).

## III

The 1986 amendments to CERCLA are the genesis of the term "enforcement activities"; we begin, therefore, by considering the statutory basis for the claim in the original CERCLA enactment and the SARA provisions' effect on it. In its original form CERCLA contained no express provision authorizing a private party that had incurred cleanup costs to seek contribution from other PRP's. In numerous cases, however, District Courts interpreted the statute—particularly the § 107 provisions outlining the liabilities and defenses of persons against whom the Government may assert claims—to impliedly authorize such a cause of action.[7]

The 1986 amendments included a provision—CERCLA § 113(f)—that expressly created a cause of action for contribution. See 42 U. S. C. § 9613(f). Other SARA provisions, moreover, appeared to endorse the judicial decisions recognizing a cause of action under § 107 by presupposing that such an action existed. An amendment to § 107 itself, for example, refers to "amounts recoverable in an action under this section." 42 U. S. C. § 9607(a)(4)(D). The new contribution section also contains a reference to a "civil action . . . under section 9607(a)." 42 U. S. C. § 9613(f)(1). Thus the statute now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107.

---

[7] In *Walls* v. *Waste Resource Corp.*, 761 F. 2d 311 (CA6 1985), Judge Merritt noted that District Courts "have been virtually unanimous" in holding that § 107(a)(4)(B) creates a private right of action for the recovery of necessary response costs. *Id.*, at 318 (citing *Bulk Distribution Centers, Inc.* v. *Monsanto Co.*, 589 F. Supp. 1437, 1442–1444 (SD Fla. 1984); *Jones* v. *Inmont Corp.*, 584 F. Supp. 1425, 1428 (SD Ohio 1984); *Philadelphia* v. *Stepan Chemical Co.*, 544 F. Supp. 1135 (ED Pa. 1982); *Pinole Point Properties, Inc.* v. *Bethlehem Steel Corp.*, 596 F. Supp. 283, 293 (ND Cal. 1984)).

As we have said, neither § 107 nor § 113 expressly calls for the recovery of attorney's fees by the prevailing party. In contrast, two SARA provisions contain explicit authority for the award of attorney's fees. A new provision authorizing private citizens to bring suit to enforce the statute, see 100 Stat. 1704–1705, expressly authorizes the award of "reasonable attorney and expert witness fees" to the prevailing party. 42 U. S. C. § 9659(f). And an amendment to the section authorizing the Attorney General to bring abatement actions provides that a person erroneously ordered to pay response costs may in some circumstances recover counsel fees from the Government. See § 9606(b)(2)(E).[8] Since its enactment CERCLA also has expressly authorized the recovery of fees in actions brought by employees claiming discriminatory treatment based on their disclosure of statutory violations. See § 9610(c) ("aggregate amount of all costs and expenses (including the attorney's fees)" is recoverable).

Judicial decisions, rather than explicit statutory text, also resolved an issue that arose frequently under the original version of CERCLA—that is, whether the award in a government enforcement action seeking to recover cleanup costs could encompass its litigation expenses, including attorney's fees. Here, too, District Courts generally agreed that such fees were recoverable.[9] Congress arguably endorsed these holdings, as well, in the SARA provision redefining the term "response" to include related "enforcement activities," 100

---

[8] Under this section, the reimbursement that a court awards "may include appropriate costs, fees, and other expenses" in accordance with 28 U. S. C. §§ 2412(a) and (d), which outline the procedures by which costs and fees are awarded. Section 2412(d)(2)(A), in particular, defines "fees and other expenses" to include reasonable attorney's fees.

[9] See, e. g., United States v. South Carolina Recycling & Disposal, Inc., 653 F. Supp. 984, 1009 (S. C. 1984), aff'd in part and vacated in part, 858 F. 2d 160 (CA4 1988), cert. denied, 490 U. S. 1106 (1989); United States v. Northeastern Pharmaceutical & Chemical Co., 579 F. Supp. 823, 851 (WD Mo. 1984) (same), aff'd in part and rev'd in part, 810 F. 2d 726 (CA8 1986), cert. denied, 484 U. S. 848 (1987).

Stat. 1615.[10]  Key Tronic contends that a private action under § 107 is one of the enforcement activities covered by that definition and that fees should therefore be available in private litigation as well as in government actions.

For three reasons, we are unpersuaded.  First, although § 107 unquestionably provides a cause of action for private parties to seek recovery of cleanup costs, that cause of action is not explicitly set out in the text of the statute.[11]  To conclude that a provision that only impliedly authorizes suit nonetheless provides for attorney's fees with the clarity required by *Alyeska* would be unusual if not unprecedented. Indeed, none of our cases has authorized fee awards to prevailing parties in such circumstances.

Second, Congress included two express provisions for fee awards in SARA without including a similar provision in either § 113, which expressly authorizes contribution claims, or in § 107, which impliedly authorizes private parties to recover cleanup costs from other PRP's.  These omissions

---

[10] According to the House Committee Report on this amendment, § 101(25)'s modification of the definition of "response action" to include related enforcement activities "will confirm the EPA's authority to recover costs for enforcement actions taken against responsible parties."  H. R. Rep. No. 99–253, pp. 66–67 (1985).

[11] JUSTICE SCALIA correctly notes that "to say that A shall be liable to B is the *express* creation of a right of action."  *Post*, at 822.  Section 107, however, merely says that "A shall be liable" without revealing *to whom* A is liable.  Sections 104 and 106 plainly indicate that the parties described in § 107 are liable to the Government.  The statute thus expressly identifies the Government as a potential plaintiff and only impliedly identifies private parties as the hypothetical B in § 107 litigation.  That § 107 imposes liability on A for costs incurred "by any other person" *implies*— but does not expressly command—that A may have a claim for contribution against those treated as joint tortfeasors.  Cf. *Texas Industries, Inc.* v. *Radcliff Materials, Inc.*, 451 U. S. 630, 639–640 (1981) (finding no implied right to contribution from other participants in conspiracy violative of antitrust laws); *Northwest Airlines, Inc.* v. *Transport Workers*, 451 U. S. 77, 91–95 (1981) (finding no implied right to contribution under the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964).

strongly suggest a deliberate decision not to authorize such awards.

Third, we believe it would stretch the plain terms of the phrase "enforcement activities" too far to construe it as encompassing the kind of private cost recovery action at issue in this case. Though we offer no comment on the extent to which that phrase forms the basis for the Government's recovery of attorney's fees through § 107, the term "enforcement activity" is not sufficiently explicit to embody a private action under § 107 to recover cleanup costs.[12] Given our adherence to a general practice of not awarding fees to a prevailing party absent explicit statutory authority, *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S., at 262, we conclude that CERCLA § 107 does not provide for the award of private litigants' attorney's fees associated with bringing a cost recovery action.[13]

## IV

The conclusion we reach with respect to litigation-related fees does not signify that all payments that happen to be made

_____

[12] That characterization undeniably applies to citizen suits brought by private parties under § 310 seeking affirmative relief. Significantly, Congress expressly authorized fee awards in such cases. See 42 U. S. C. § 9659(f).

[13] In concluding that a private party may not recover attorney's fees arising from the litigation of a private recovery action, the Tenth Circuit observed: "We simply cannot agree with those courts that find an explicit authorization for the award of litigation fees from the fact that response costs include related enforcement activities. We recognize that CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others. It may be true that awarding the litigation fees incurred in that recovery would further this goal. Nonetheless, the efficacy of an exception to the American rule is a policy decision that must be made by Congress, not the courts. The desirability of a fee-shifting provision cannot substitute for the express authorization mandated by the Supreme Court." *FMC Corp* v. *Aero Industries, Inc.*, 998 F. 2d 842, 847 (1993) (citing *Alyeska*, 421 U. S., at 263–264).

to a lawyer are unrecoverable expenses under CERCLA. On the contrary, some lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of § 107(a)(4)(B). The component of Key Tronic's claim that covers the work performed in identifying other PRP's falls in this category. Unlike the litigation services at issue in *Alyeska*, these efforts might well be performed by engineers, chemists, private investigators, or other professionals who are not lawyers. As the Tenth Circuit observed, the American rule set out in *Alyeska* does not govern such fees "because they are not incurred in pursuing litigation." *FMC Corp.* v. *Aero Industries, Inc.*, 998 F. 2d 842, 847 (1993).

The District Court in this case recognized the role Key Tronic's search for other responsible parties played in uncovering the Air Force's disposal of wastes at the site and in prompting the EPA to initiate its enforcement action against the Air Force. 766 F. Supp., at 872, n. 4. Tracking down other responsible solvent polluters increases the probability that a cleanup will be effective and get paid for. Key Tronic is therefore quite right to claim that such efforts significantly benefited the entire cleanup effort and served a statutory purpose apart from the reallocation of costs. These kinds of activities are recoverable costs of response clearly distinguishable from litigation expenses.[14]

This reasoning does not extend, however, to the legal services performed in connection with the negotiations between Key Tronic and the EPA that culminated in the consent decree. Studies that Key Tronic's counsel prepared or supervised during those negotiations may indeed have aided the EPA and may also have affected the ultimate scope and form of the cleanup. We nevertheless view such work as primarily protecting Key Tronic's interests as a defendant in the proceedings that established the extent of its liability. As

---

[14] As is customary in assessments of this sort, of course, trial courts will determine the exact amount of these costs that is recoverable.

such, these services do not constitute "necessary costs of response" and are not recoverable under CERCLA.

The judgment of the Court of Appeals is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE BLACKMUN and JUSTICE THOMAS join, dissenting in part.

I disagree with the Court's conclusion that a private litigant cannot recover the attorney's fees associated with bringing a cost recovery action under § 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9607. Under §§ 107(a)(4)(A) and (B), a party who has incurred costs to clean up a hazardous waste site can recover those costs from any other party liable under CERCLA. Those provisions state that:

"Covered persons . . . shall be liable for—

"(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

"(B) *any other necessary costs of response incurred by any other person* consistent with the national contingency plan." (Emphases added.)

Title 42 U.S.C. § 9601(25) explains that:

"The terms *'respond'* or *'response'* means *[sic]* remove, removal, remedy, and remedial action; *all such terms* (including the terms 'removal' and 'remedial action') *include enforcement activities related thereto.*" (Emphases added; footnote omitted.)

Under the plain language of these provisions, a private litigant is entitled to the costs associated with bringing a § 107(a)(4)(B) cost recovery action, which is the only

"enforcement activit[y]" he can conceivably conduct. Obviously, attorney's fees will constitute the major portion of those enforcement costs.

The Court seeks to characterize the right of recovery created by § 107 as an "implied" right of action, see *ante*, at 816, 818, and n. 11—perhaps in order to support the view that the authorization of attorney's fees included within that right of action is not explicit (a point I shall discuss more fully below). That characterization is mistaken. Section 107(a)(4)(B) states, as clearly as can be, that "[c]overed persons . . . shall be liable for . . . necessary costs of response incurred by any other person." Surely to say that A shall be liable to B is the *express* creation of a right of action.* Moreover, other language in § 107 of CERCLA refers to "amounts recoverable in an action under this section," 42 U. S. C. § 9607(a)(4)(D), and language in § 113 discusses the "civil action . . . under section 9607(a) [*i. e.*, § 107(a) of CERCLA]," 42 U. S. C. § 9613(f)(1). The Court's assumption seems to be that only a statute that uses the very term "cause of action" can create an "express" cause of action, and that all other causes of action are "implied." That is not ordinary usage. An implied cause of action is something quite different from what we have here. See, *e. g., Central Bank of Denver, N. A.* v. *First Interstate Bank of Denver, N. A., ante,* at 171 (discussing the genesis of the implied private causes of action under §§ 10(b) and 14(a) of the Securities and Exchange Act of 1934).

---

*I cannot agree with JUSTICE STEVENS's contention that CERCLA "expressly identifies the Government as a potential plaintiff and only impliedly identifies private parties" as potential plaintiffs in § 107 litigation. *Ante*, at 818, n. 11. Section 107(a)(4)(A) states that persons are liable for certain costs "incurred by the United States Government or a State or an Indian Tribe," thus providing an express cause of action for those plaintiffs. Section 107(a)(4)(B) states that persons are liable for certain costs "incurred by *any other person*" (emphasis added), thus providing an express cause of action for private parties.

The first of the three reasons the Court gives for refusing to read §§ 9607(a)(4)(B) and 9601(25) to cover attorney's fees displays the same confusion between a requirement of explicitness and a requirement of a password. The Court states that "attorney's fees generally are not . . . recoverable . . . 'absent explicit congressional authorization,'" *ante*, at 814 (quoting *Runyon* v. *McCrary*, 427 U. S. 160, 185 (1976), and notes further that none of the statutory provisions at issue "expressly mentions the recovery of attorney's fees," *ante*, at 815. But to meet the demands of *Runyon*, Congress need only be explicit—it need not incant the magic phrase "attorney's fees." Where, as here, Congress has explicitly authorized recovery of costs of "enforcement activities," and where, as here, the costs of "enforcement activities" naturally (and indeed primarily) include attorney's fees, that textual authorization satisfies *Runyon*.

The Court also draws a negative inference from the fact that Congress expressly provided for attorney's fee awards in other portions of the Superfund Amendments and Reauthorization Act of 1986, 100 Stat. 1613, the Act that added the "enforcement activities" language of 42 U. S. C. § 9601(25). From this, the Court concludes that Congress's failure to mention attorney's fees in § 9607 or § 9613 "strongly suggest[s] a deliberate decision not to authorize such awards." *Ante*, at 819. That argument would be persuasive if it were ambiguous whether, for a private party, the cost of "enforcement activities" includes attorney's fees. But since it is not, the fact that Congress provided for the recovery of attorney's fees *eo nomine* in two other sections is of little relevance. Given the explicitness of the award of costs of "enforcement activities," the "'attorney's fees' was used elsewhere" argument is simply a watered-down version of the "magic words" argument rejected above.

Finally, the Court comes to grips with the core issue in this case, declaring that "it would stretch the plain terms of the phrase 'enforcement activities' too far to construe it as

encompassing the kind of private cost recovery action at issue in this case." *Ibid.* I do not agree. While the term "enforcement" often—perhaps even usually—is used in connection with government prosecution, that is assuredly not the only form of legal action it refers to. It clearly includes the assertion of a valid private claim against another private litigant. Lawyers regularly speak of "enforceable obligations" and "enforceable contracts," and of "enforcing" a private judgment. We have called the private rights of action created by the Clayton Act "vehicle[s] for private enforcement" of the law, *Cargill, Inc.* v. *Monfort of Colo., Inc.,* 479 U. S. 104, 109 (1986), and the "private enforcement" characterization seems especially apt here, where the plaintiff's suit must be "consistent with the national contingency plan" promulgated by the Environmental Protection Agency. 42 U. S. C. § 9607(a)(4)(B). As I read the Court's opinion, it interprets "enforcement activities" to cover, *at most*, the *government's* attorney's fees in a cost recovery action. See *ante*, at 819. That gives the specification of § 9601(25) that certain terms include "enforcement activities" *no* application to private parties, and *no* application to any terms *except* "removal" and "remedial action"—which is very curious, since the parenthetical in § 9601(25) suggests that those two terms, far from being central to the provision (much less an embodiment of its total application), were in danger of being overlooked.

I would read "enforcement activities" in § 9601(25) to cover the attorney's fees incurred by both the government and private plaintiffs successfully seeking cost recovery under § 9607 of CERCLA.