**OHIO RIVER VALLEY ENVIRON-
MENTAL COALITION, INC. et
al., Plaintiffs,**

v.

**Stephanie R. TIMMERMEYER,
et al., Defendants.**

No. CIV.A.3:00–0058.

United States District Court,
S.D. West Virginia,
Huntington Division.

March 31, 2005.

Charles Kincaid, Huntington, WV, Walton D. Morris, Jr., Theodore J. Korth, Nelson & Korth, PLC, Charlottesville, VA, for Plaintiffs.

Robert G. McLusky, Esquire, James R. Snyder, Esquire, Jackson & Kelly, Thomas L. Clarke, West Virginia Division of Environmental Protection Office of Legal Services, Charleston, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER REGARDING ATTORNEY FEES

CHAMBERS, District Judge.

Plaintiff Hominy Creek Preservation Association, Inc. (HCPA) petitions the Court for an award of attorney fees and litigation costs against Green Valley Coal Company (Green Valley), an intervenor subsequently made a defendant in this action. This lawsuit was brought under the citizen suit provisions in the Surface Mining Control and Reclamation Act (SMCRA). HCPA contends that the applicable standard found in 30 U.S.C. § 1270(d)[1] entitles it to an award despite the fact that its lawsuit, insofar as against Green Valley, was ultimately dismissed voluntarily by HCPA prior to an adjudication on the merits. HCPA argues that certain remedial environmental action was undertaken by Green Valley in response to the lawsuit or in response to the regulatory actions which HCPA prompted. For the reasons cited below, the Court **GRANTS IN PART** HCPA's Petition.

■ Under the "American rule," ordinarily applicable in our legal system, there is a "general practice of not awarding fees to a 'prevailing party' absent explicit statutory authority." *Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,* 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (quoting *Key Tronic Corp. v. United States,* 511 U.S. 809, 819, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994)). Congress has authorized courts to award fees and costs in numerous federal statutes. The SMCRA fee provision falls into the "whenever...appropriate" category of fee shifting statutes. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 682, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). A party seeking fees under this standard must establish that as a result of its lawsuit, some success on the merits was obtained. *Id.* This standard is more lenient and distinguishable from the "prevailing party" test found in many other federal fee-shifting statutes. *Id.* at 688, 103 S.Ct. 3274. ("Put differently, by enacting § 307(f), Congress intended to eliminate both the restrictive readings of 'prevailing party' adopted in some of the cases cited above and the necessity for case-by-case scrutiny by federal courts into whether plaintiffs prevailed 'essentially' on 'central issues'"). *Id.* Green Valley asserts that *Buckhannon,* the more recent case, has altered the standard for eligibility under fee-shifting statutes and precludes an award here.

*Ruckelshaus* arose under the Clean Air Act in which Congress had authorized courts to award attorney fees "whenever it determines that such an award is appropriate." 42 U.S.C. § 7607(f). Noting that a number of federal statutes, including

---

1. 30 U.S.C. § 1270(d) provides: "The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure."

SMCRA, used identical language which would be controlled by the same construction, the Court concluded that "some success on the merits" was required to trigger eligibility for an award. *Ruckelshaus*, 463 U.S. at 682, 103 S.Ct. 3274. In adopting the fee-shifting statute found in the Clean Air Act, Congress moved away from the "prevailing party" standard to expand eligibility for fee awards to partially prevailing parties: "parties achieving *some success*, even if not major success." *Id.* at 688, 103 S.Ct. 3274 (emphasis in original). In *Buckhannon*, Chief Justice Rehnquist, writing for the majority, examined the Fair Housing Amendments Act of 1988 and its "prevailing party" fee-shifting provisions. 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). His analysis again focused on the Congressional intent reflected by the use of "prevailing party" as the standard. The Court found that "prevailing party" is a legal term of art which means that party has been awarded some relief by the court. *Id.* at 603, 121 S.Ct. 1835. The "catalyst theory" was rejected because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." *Id.* at 605, 121 S.Ct. 1835. As he had done in *Ruckelshaus*, Chief Justice Rehnquist relied on the expression of Congressional intent found in its choice of the language used in these statutes. *Id.* There is nothing in *Buckhannon* to suggest that the Court's earlier decision in *Ruckelshaus*, and its different statutory standard, was either expressly or implicitly altered. Thus, *Ruckelshaus* remains controlling for the "whenever...appropriate" statutes.

■ The parties devote much of their briefs to the question of whether the "catalyst theory" applies. Under the "catalyst theory", a plaintiff may recover fees where the defendant's voluntary change in conduct results from the lawsuit and provides the plaintiff with the desired result. *Buckhannon* at 601, 121 S.Ct. 1835. HCPA's petition cites the "catalyst theory" as a basis for the award, and Green Valley responds that, even before *Buckhannon*, the Fourth Circuit had broadly rejected the catalyst theory in *S–1 and S–2 v. State Board of Education of North Carolina*, 21 F.3d 49 (1994). The Court of Appeals, in *S–1 and S–2*, interpreted *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), which applied the "prevailing party" standard in a Section 1983 action, as precluding use of the "catalyst theory." *S–1 and S–2*, 21 F.3d at 51. Though *S–1 and S–2* expressly prohibits use of the "catalyst theory," this Court is not persuaded that the opinion extends beyond its context. *Farrar, Buckhannon*, and *S–1 and S–2* arose under "prevailing party" fee-shifting statutes, and neither the United State Supreme Court nor the Fourth Circuit has extended these holdings to "whenever...appropriate" statutes. As noted by HCPA, other courts have since found the "catalyst theory" viable in the environmental lawsuits controlled by the latter. *See Loggerhead Turtle v. County Council of Volusia County, Florida*, 307 F.3d 1318 (11th Cir.2002); *Center for Biological Diversity v. Norton*, 262 F.3d 1077 (10th Cir.2001); and *Vieques Conservation and Historical Trust, Inc. v. Martinez*, 313 F.Supp.2d 40 (D.P.R.2004). These courts reason, persuasively, that rejection of the "catalyst theory" informs only the "prevailing party" standard, not the "whenever...appropriate" standard at issue here. As inviting as it is for this Court to join their ranks, the Court finds it unnecessary to the resolution of this case.

■ Here, HCPA achieved at least some significant success in the lawsuit and, thus, does not require support from the "catalyst theory." HCPA initiated this action against the Secretary of West Virgi-

nia's Department of Environmental Protection (DEP) in a broad challenge of the State's compliance with federal law in its cumulative hydrologic impact assessment (CHIA) process.[2] Recognizing the import of this action for pending permits, Green Valley obtained leave to intervene as a defendant and joined the State's effort defeat HCPA's claims.[3] After notice that the State intended to grant two permits to Green Valley, HCPA sought preliminary injunctive relief against issuing them, arguing that the State's CHIA process was flawed and that Green Valley's permit application failed to meet federal standards. HCPA contended that Green Valley's operations, which would be expanded under the permits, already caused violations of water quality standards and that the flawed CHIA analysis used by DEP and Green Valley would result in more damage in violation of state regulations and federal law. HCPA alleged that Green Valley's Colt Branch refuse fill was discharging iron-laden water into Hominy Creek, resulting in violations of water quality. This Court found it likely the HCPA would prevail on its claims that the CHIA insufficiently identified the sources and amount of iron flowing into Hominy Creek and therefore prematurely determined that the permits would not cause material to the steam. *See* Order Regarding Preliminary Injunction [Docket # 52] and Memorandum Opinion [Docket # 55]. Granting the preliminary injunction in part, the Court prohibited the DEP from issuing the permit to expand the refuse fill until further data collection, analysis, and reconsideration of the CHIA in light of these findings.

The state defendant appealed and Green Valley remained an active litigant in the case as it proceeded. While the appeal was pending, Green Valley withdrew its application for the enjoined permit and filed a new proposal, which DEP would be required to evaluate anew. DEP in turn withdrew the permit [Docket # 129] and HCPA moved to dissolve the injunction as moot. DEP objected, but because the State had yet to issue a new permit, the Court dissolved the injunction as moot and the appeal was subsequently dismissed as moot.

At that point in the lawsuit, HCPA achieved one of its primary purposes—suspension of Green Valley's permit, based on a CHIA which HCPA asserted was invalid, and reconsideration of the CHIA. With the preliminary injunction barring operations under the enjoined permit, Green Valley responded by submitting a new permit application which would require DEP to go through the CHIA process again before deciding whether to issue a permit. HCPA achieved its desired result through the preliminary injunction, an order which constituted a material change in the legal relationship between HCPA, DEP and Green Valley. Rather than await the results of the appeal, Green Valley withdrew its application for the disputed permit and started over in the permit process. Thus, HCPA is at least a "partially prevailing plaintiff" as required by *Ruckelshaus*. Had Green Valley not withdrawn its application and the appeal led to reversal of the injunction, HCPA would not have achieved sufficient success

2. In denying the defendants' motions to dismiss, the Court explained in some detail the CHIA process [Docket # 48].

3. Green Valley asserts that no direct claims were made against it until well into the litigation in 2002. While literally true, this fact is inconsequential. Green Valley intervened as

a defendant and vigorously contested HCPA's complaints, including filing a motion to dismiss and opposing the preliminary injunction. Undoubtedly, much of HCPA's time and efforts were in response to Green Valley's actions in the lawsuit.

to qualify for an award of fees. However, whether prompted solely, partially or not at all by the injunction, Green Valley's decision cemented the relief HCPA obtained by the injunction. HCPA could not have obtained more at that point. The preliminary injunction coupled with Green Valley's withdrawal of the permit application constituted sufficient success on the merits to make HCPA eligible for an award.

The Court is aware that the Fourth Circuit Court of Appeals has rejected the argument that preliminary injunctive relief is sufficient "judicial imprimatur" to confer "prevailing party" status. *Smyth v. Rivero*, 282 F.3d 268, 277 (4th Cir.2002). There, the Fourth Circuit read *Buckhannon* to require a judicial recognition of the merits of the claim. Pointing out that the likelihood of success is only one of four factors balanced for preliminary injunctive relief, the court reasoned that such relief failed to establish judicially determined success on the merits.[4] The Fourth Circuit's position has been criticized as inconsistent with *Buckhannon*. Bart Forsyth, *Preliminary Imprimaturs: Prevailing Party Status Based on Preliminary Injunctions*, 60 Wash. & Lee L.Rev. 927, 947 (2003). Clearly, *Buckhannon* does not require a finding of liability, as it recognized consent decrees with no admission of liability as a court-ordered change in the legal relationship necessary to permit an award. 532 U.S. at 604, 121 S.Ct. 1835. Here, by winning at the preliminary injunction stage, HCPA obtained, initially, court-ordered relief bringing to a halt the issuing of Green Valley's permit by the DEP.

When Green Valley withdrew its application, mooting the injunction, that relief became the final result with respect to the challenged permit. At least as to the validity of the permit, HCPA's lawsuit achieved one of its central goals.

The distinction between the "prevailing party" and "whenever ... appropriate" standards makes *Smyth v. Rivero* inapplicable here. Although obtaining a preliminary injunction to restrain the defendant, even when coupled with the defendant's later change in conduct, may not be enough to meet the *Smyth* "prevailing party" test, it does meet the *Ruckelshaus* test and, to the extent necessary, satisfies *Buckhannon.*

■ Though the statutory standard here is "whenever appropriate," the Court's discussion in *Buckhannon* is instructive. In addition to the obvious example of a favorable judgment on the merits, the Court noted that even a consent decree which did not include an admission of liability constituted a court-ordered change in the legal relationship. *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835. Where equitable relief is all that plaintiffs seek, as is typical in environmental lawsuits such as this one, a change in the defendant's conduct is the goal, and HCPA reached that goal here. The preliminary injunction, though not a judgment on the merits, was more than the sort of procedural victories found insufficient in *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987); and *Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).[5]

---

4. The Ninth Circuit Court of Appeal adopted a contrary position, finding that where plaintiff obtained a preliminary injunction and the defendant's subsequent compliance provided plaintiff with the desired result, the plaintiff prevailed under *Buckhannon*. *Watson v.*

*County of Riverside*, 300 F.3d 1092 (9th Cir. 2002).

5. Green Valley also questions how HCPA can be entitled to an award where the lawsuit is dismissed by HCPA prior to adjudication on the merits. Citing the provision in 30 U.S.C.

With the withdrawal of the disputed permit, the fight shifted back to the administrative and regulatory process. HCPA claims it made citizen complaints under SMCRA which prompted the DEP and the Office of Surface Mining Reclamation and Enforcement (OSM) to conduct inspections and issue notices of violations against Green Valley's operations on Hominy Creek. These complaints and notices arose, HCPA says, from the same concerns it advanced in attacking the CHIA process and the permits issued to Green Valley. Eventually, Green Valley conducted a remedial project on its refuse fill to mitigate or eliminate the possible contribution of the fill to Hominy Creek's iron problems, the very concern which HCPA raised and the Court acknowledged in the preliminary injunction. HCPA takes full credit for Green Valley's conduct, arguing that the lawsuit and later citizen complaints led the DEP and OSM to issue notices of violations and caused Green Valley to undertake remedial work to further protect Hominy Creek from its refuse fill. Green Valley does not exactly deny this assertion; it merely claims it decided to remediate instead of defending against the alleged violations and does not know whether the violation notices were prompted by HCPA complaints. Because the record is unclear on what transpired in the regulatory process between the withdrawal of the enjoined permit and the voluntary dismissal of the suit against Green Valley,

the Court declines to make specific findings or conclusions as to the amount of an award until these matter are clarified.[6] Even so, what is undisputed is that HCPA succeeded in causing DEP and Green Valley to repeat the permitting process and that Green Valley subsequently conducted remedial work that addressed, in a substantial and meaningful way, Plaintiff's primary concerns and this Court's preliminary injunction.

For these reasons, Plaintiffs' Petition is **GRANTED in part** in that the Court finds HCPA is eligible for an award of attorney fees and costs. The Court **DIRECTS** HCPA to submit further support, such as affidavits and documents, for its claim that the citizen complaints and subsequent regulatory proceedings are sufficiently related to the lawsuit to be considered by the Court in determining the amount of the award. HCPA must submit this material within thirty days from this Order and Green Valley shall have fifteen days to reply. Green Valley also sought leave to address the reasonableness of HCPA's fee rates and the total amount of the requested award, if the Court found HCPA is eligible for an award. The Court **GRANTS** leave to Green Valley to address any objections to the rates or total amount within twenty days.

The Clerk shall forward copy of this Memorandum Opinion and Order to coun-

---

§ 1270(d), that "the court in issuing a final order" may award costs, Green Valley claims that voluntary dismissal is not a final order because it is not an adjudication on the merits. This claim misapprehends the nature of the final order requirement. Dismissal, even at HCPA's insistence, is nonetheless a final order because it ends the action. Any requirement that there be an adjudication on the merits relates to whether a party meets the standard for an award of fees, while the final order requirement relates to when, not whether, an award can be granted.

**6.** While both parties summarize what transpired in the regulatory and administrative proceedings after HCPA's citizen complaints were made, the record does not include copies of the complaints, notices of violations or other documents from the administrative proceedings. HCPA did not provide affidavits to support its description of the events. Green Valley supplied an affidavit from Mr. Cox but, due to an apparent clerical error, only the first page was filed with the Court.

sel of record and publish it on the Court's website.