Dooley, J.,
¶ 34. dissenting. The Legislature granted local boards of health the authority to bring a civil action to enforce orders related to public health hazards or risks to public health. When such an action is brought, the superior court is empowered to “exercise all the powers available to it.” 18 V.S.A. § 130(b). This includes “ordering reimbursement from any person who caused governmental expenditures for the investigation and mitigation of the public health risk or the investigation, abatement, or removal of public health hazards.” Id. § 130(b)(5). Despite this clear directive, the majority concludes that the court cannot exercise the *135 power of granting attorney’s fees because the Legislature’s failure to use the particular words “attorney’s fees” exempts this particular governmental expenditure from the general statutory authorization. This conclusion is made despite the statute’s stated remedial purpose and in the face of the plain meaning of the statutory language. It relies upon one supportive decision from Pennsylvania while ignoring the multiple contrary decisions.
¶ 35. Because attorney’s fees plainly fall within the statutory language allowing recovery of expenditures incurred in the enforcement of public health orders and because an award of such fees is in keeping with the statute’s overall remedial purpose, I would hold that the statute allows recovery of the attorney’s fees requested in this case, and affirm. I dissent from the majority’s holding to the contrary.
¶ 36. In construing a statute, the plain meaning of the words used is the primary indication of the Legislature’s intent. Tarrant v. Dep’t of Taxes, 169 Vt. 189, 197, 733 A.2d 733, 739 (1999). “[WJhere legislative intent can be ascertained on its face, the statute must be enforced according to its terms without resorting to statutory construction.” Harris v. Sherman, 167 Vt. 613, 614, 708 A.2d 1348, 1349 (1998) (mem.).
¶ 37. The language at issue here is not simply the reference to “governmental expenditures,” as emphasized by the majority, but the entire phrase, including the delegation of authority to the court and the list of actions for which reimbursement is allowed. When all of this language is considered, the logical conclusion is that the Legislature intended to allow recovery of the attorney’s fees granted in this case. See Springfield Term. Ry. v. Agency of Transp., 174 Vt. 341, 347, 816 A.2d 448, 453 (2002) (explaining that where language of statute “is dispositive” court will not interpret words in more limited sense).
¶ 38. First, the statute indicates that once an enforcement action is filed, the court is authorized to “exercise all the powers available to it.” 18 V.S.A. § 130(b) (emphasis added). This is not limiting language. It authorizes the court to provide a full measure of relief to the board of health. See In re Jones, 2009 VT 113, ¶ 7, 187 Vt. 1, 989 A.2d 482 (explaining that this Court presumes plain language is “most basic expression of legislative intent”).
¶ 39. Second, the statute states that the board of health can seek “reimbursement from any person who caused governmental *136 expenditures.” 18 V.S.A. § 180(b)(5). Use of the terms “reimbursement” and “governmental expenditures” indicate that the Legislature intended the local board to be repaid for all of the costs it incurred.
¶ 40. Third, the actions for which reimbursement is available are “the investigation and mitigation of the public health risk or the investigation, abatement, or removal of public health hazards.” Id. These actions imply that the government entity can recover expenses incurred for nonlitigation and litigation responses, both of which may involve the work of attorneys. Investigation entails the assessment of a risk, the actions necessary to eliminate the risk, and the options available under the law to require the risk to be eliminated. Abatement usually refers to curbing or eliminating the risk or the harm. This often involves enforcement of the law through legal proceedings. Further, the term “removal” as used in environmental law refers to a short-term action taken to halt immediate risk posed by hazardous waste, such as through legal action. See 10 V.S.A. § 1288(g)(5) (defining “removal action” as “the cleanup or removal of released hazardous materials from the environment and such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment which may result from the improper release or threat of release of hazardous materials”); see also 42 U.S.C. § 9601(23) (defining removal as “the cleanup or removal of released hazardous substances from the environment”). These actions all involve the work of attorneys, either through nonligitation tasks, such as investigation and monitoring, or through litigation. Although the words “attorney’s fees” are not used, the language, when taken together, is sufficient to demonstrate that the Legislature intended for reimbursement of attorney’s fees. See Martin v. City of Tigard, 72 P.3d 619, 627-28 (Or. 2003) (holding that plain language of constitutional provision, allowing assessment for “actual costs incurred by the government unit in designing, constructing and financing the project,” meant city could include attorney’s fees associated with litigation costs incurred in assessment and in condemnation proceeding).
¶ 41. The majority finds instructive a comparison of the coverage for the expenses of the engineer, as allowed by the trial court, and the noncoverage of the costs of a lawyer, calling the costs of the engineer direct expenditures and the costs of the lawyer only indirect expenditures. For two main reasons, I also find the *137 comparison instructive, but I conclude the comparison supports coverage of lawyer expenses.
¶ 42. The first main reason is that the comparison is based on a distinction without a difference. Neither engineers nor lawyers are likely to be on the staff of a municipality, except possibly in the largest cities; each must be retained to respond to the emergency. In circumstances like those in this case, neither is hired to eliminate the public health hazard. Each is hired to enable the town to determine what must be done to eliminate the hazard and to require the building owner to take the necessary actions. Each is involved in the town investigation, mitigation, and abatement of the hazard. Each is involved in the litigation, and prelitigation, aspects of the town’s intervention. If the engineer’s involvement is “direct,” the lawyer’s involvement is equally direct. There is no ascertainable reason why the Legislature would authorize reimbursement for the expense of the engineer, but not the lawyer. Particularly difficult to understand is why the Legislature would prohibit a town from being reimbursed for investigation and monitoring — that is, nonlitigation costs — because the tasks were performed by a lawyer. The majority’s no-reimbursement decision fails to recognize this distinction and covers all lawyer fees whether for litigation or not.
¶ 43. The second main reason is equally important. The majority cites five statutes for the proposition that if the Legislature intended to authorize reimbursement for attorney’s fees, it would have stated so explicitly. In four of the examples, however, the Legislature has specifically authorized attorney’s fees as the only litigation expenses recoverable beyond basic costs.[4] See 9 V.S.A. § 4458(a); 18 V.S.A. § 8701(f); 21 V.S.A. § 678(a)-(b); 32 V.S.A. § 5258. In these situations, the plaintiff could not cover the cost of an engineer’s fees to provide needed information in an investigation or to provide expert witness testimony. Thus, the use of the exact language “attorney’s fees” was necessary to provide the description of exactly what was authorized and not the appropriate language where attorney’s fees are only part of authorized litigation and preparation costs.
¶ 44. In contrast, the example for this latter situation — where attorney’s fees are only part of authorized litigation and prepa *138 ration costs — is the first statute cited by the majority, 9 V.S.A. § 2458(b)(3), which allows the Attorney General in a consumer protection action to obtain “an order requiring reimbursement to the State of Vermont for the reasonable value of its services and its expenses in investigating and prosecuting the action.” This language would cover both the cost of attorneys and the expense of obtaining expert assistance from persons like an engineer, but does not explicitly itemize the attorney’s fees part of that recovery.
¶ 45. There is no support in any of these statutes for the majority’s position that the Legislature’s failure to explicitly use the words “attorney’s fees” in 18 V.S.A. § 130 means that it intended that attorney’s fees not be recoverable. This is not a situation where the Legislature sought to authorize only attorney’s fees. Rather than itemizing every type of expense the town could incur as a result of an enforcement action under § 130, the Legislature used a more general description of the tasks for which a government entity could be reimbursed without itemizing the professionals who might perform those tasks.
¶ 46. The majority has cited a Pennsylvania case to support its position while ignoring a far more relevant line of cases beginning with Key Tronic Corp. v. United States, 511 U.S. 809, 811 (1994), even though this case offers partial support for its decision. The issue in Key Tronic was whether a company which had been found liable for causing pollution of a site that in turn polluted a public water supply, and which had incurred “response costs” to clean up the site, could recover attorney’s fees as part of those response costs from another entity responsible for the pollution. The litigation arose under § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B), of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986. That section allowed recovery of “any . . . necessary costs of response incurred by any other person consistent with the national contingency plan.” Id. The definition section of the Act defined “respond” or “response” to mean “remove, removal, remedy and remediation action” and specified that the terms “include enforcement activities related thereto.” 42 U.S.C. § 9601(25). Plaintiffs argued that attorney’s fees in three areas fell within the statutory language as “necessary costs of response”: (1) identifying other responsible parties; (2) negotiating liability and response with the Environ *139 mental Protection Agency (EPA); and (3) litigation to establish liability and contribution amounts for other responsible entities.
¶ 47. The Court first stated the general rule governing statutory authority for recovery of attorney’s fees:
Our cases establish that attorney’s fees generally are not a recoverable cost of litigation “absent explicit congressional authorization.” Recognition of the availability of attorney’s fees therefore requires a determination that “Congress intended to set aside this longstanding American rule of law.” Neither CERCLA § 107, the liabilities and defenses provision, nor § 113, which authorizes contribution claims, expressly mentions the recovery of attorney’s fees. The absence of specific reference to attorney’s fees is not dispositive if the statute otherwise evinces an intent to provide for such fees. The Eighth Circuit, for example, found “a sufficient degree of explicitness” in CERCLA’s references to “necessary costs of response” and “enforcement activities” to warrant the award of attorney’s fees and expenses. Mere “generalized commands,” however, will not suffice to authorize such fees.
Key Tronic, 511 U.S. at 814-15 (citations and footnote omitted). Applying that general standard, the Court denied attorney’s fees for the second and third category of activities as not explicitly authorized by the statute, but allowed attorney’s fees for the first activity.
¶ 48. The Court held that the statutory language did not authorize recovery of attorney’s fees for the litigation-related activities — the second and third categories listed above — for three reasons. First, it held that the private right of action, although judicially recognized, was only implied in the statute, and it would be too great a stretch to include attorney’s fees in the implied remedy. Id. at 818. Second, it noted that the same statutory amendments that brought the definitions on which plaintiff relied brought into CERCLA two instances where attorney’s fees were explicitly authorized by name, suggesting they were not authorized by the more general language on which plaintiff relied. Id. at 818-19. Finally, it held that “it would stretch the plain terms of the phrase ‘enforcement activities’ too far to construe it as encompassing the kind of private cost recovery action at issue in this case.” Id. at 819.
*140 ¶ 49. The Court held that attorney’s fees for the first category of activities — determining other responsible parties — were recoverable under the Act. It reasoned:
On the contrary, some lawyers’ work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of § 107(a)(4)(B). The component of Key Tronic’s claim that covers the work performed in identifying other PRP’s falls in this category. Unlike the litigation services . . . , these efforts might well be performed by engineers, chemists, private investigators, or other professionals who are not lawyers.
Id. at 820.
¶ 50. While Key Tronic determined the availability of attorney’s fees for private plaintiffs, it did not address the situation where a government agency incurs remediation expenses and seeks those, including attorney’s fees, from a responsible party. The leading case addressing this question is United States v. Chapman, 146 F.3d 1166 (9th Cir. 1998). The court in Chapman stressed that the decision in Key Tronic had reserved the question of whether the government could recoup lawyer’s fees spent in litigation and that the absence of a specific authorization for attorney’s fees in the statute was not determinative under Key Tronic. Chapman, 146 F.3d at 1174-75. The court also relied on the fact that the authorization for the government’s right of action was explicit under 42 U.S.C. § 9607(a)(4)(A), rather than implied for private plaintiffs by § 9607(a)(4)(B), and was broad, covering “all costs of removal or remediation.” Id. at 1175. Finally, it relied on the policy that the government should be able to recoup its expenses:
Finally, there are persuasive policy arguments in favor of awarding the government its attorney fees. CERCLA is remedial legislation that should be construed liberally to carry out its purpose. Congress intended to facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for hazardous wastes.
In this case, Chapman was given the opportunity to clean up his property without EPA involvement. When Chapman failed to act, the EPA stepped in and Chapman *141 finally cleaned up the site. By the time the cleanup was complete, the EPA had incurred approximately $34,000 in response costs. It demanded payment of these costs from Chapman. Chapman refused to pay, and as a result the EPA was forced to take legal action to recover its costs.
The award of attorney fees to the government in this case can act as a powerful deterrent to other parties responsible for the cleanup of hazardous materials. The threat of attorney fees should encourage other parties in Chapman’s position to take remedial action on their own when requested by the government. Who knows, it might even encourage responsible parties not to pollute and contaminate property in the first place.
Id. at 1175-76 (quotations omitted). Based on the general authority given to the governmental plaintiff and the policy considerations, the court in Chapman held that the government was entitled to recoup its expenditures on lawyers even in connection with litigation. Id. at 1176. Other federal courts have followed Chapman. See United States v. Dico, Inc., 266 F.3d 864, 877 (8th Cir. 2001); B.F. Goodrich v. Betkoski, 99 F.3d 505, 528 (2d Cir. 1996).
¶ 51. To the extent we look to persuasive authority to decide this case, we should follow Chapman and Key Tronic, The purpose of the statute in this case is to protect the public from health hazards, prevent the creation of public health hazards, and mitigate any risks. See 1985, No. 267 (Adj. Sess.), § 1 (explaining that public health act serves to protect public from public health hazards, prevent creation of public health hazards, and mitigate risks). The statute is serving the same purpose as CERCLA to protect the public by requiring the person who has caused the public health hazard to pay the full cost of its remediation. The authority of the Town here is as broad as that of the government in Chapman. Following Chapman would mean that we would affirm in this case. Even following the narrower holding in Key Tronic, applicable to a private plaintiff, would require us to affirm in part.
¶ 52. The majority asserts that Chapman is distinguishable because it contends that § 130(b) does not have the type of specific authorization contained in the federal law, which the majority describes as allowing “for the recovery of removal costs incurred *142 through ‘enforcement activities’ in response to an environmental threat.” Ante, ¶ 26 n.3. In fact, the statutes have several key similarities. The court in Chairman was persuaded by three particular aspects of the statute: first, the statute indicated the person causing the pollution was liable to the government for “all costs of removal or remedial action,” 42 U.S.C. § 9607(a)(4)(A) (emphasis added); second, the statute allowed the government to undertake various tasks like “planning, legal, fiscal, economic, engineering, architectural, and other studies or investigations” and to recover the costs of those activities, id. § 9604(b)(1); and third, response or removal action was defined to include “enforcement activities,” id. § 9601(25). Section 130(b) uses similarly broad language. It employs the same types of verbs to describe the actions for which the government should be reimbursed, including removal activities. Although there is no definition section to accompany § 130 and therefore to further define the terms “investigation and mitigation” or “investigation, abatement, or removal,” the statute uses these terms similarly to the federal statute. Further the section itself is entitled “Civil enforcement,” plainly indicating that the Legislature was using these verbs in the context of an enforcement action.
¶ 53. As a final point, the majority notes the term “governmental expenditures” is used in several other statutes and “nothing in the use of the term in those statutes” suggests that it includes attorney’s fees. Ante, ¶ 22 n.2. The majority does not further explain why this is true. None of these statutory provisions have been particularly construed by this Court, and in fact, in a prior case, this Court specifically reserved the question of whether attorney’s fees were recoverable under a different section of the Waste Management Act. See Windsor Sch. Dist. v. State, 2008 VT 27, ¶ 17, 183 Vt. 452, 956 A.2d 528 (reserving question of whether attorney’s fees are recoverable under 10 V.S.A. § 6615(i)). Although the majority states that it is not construing those statutes, the plain implication is that attorney’s fees are unavailable in all these situations. Such an implication should be avoided, particularly where many of these statutes have remedial purposes intended to protect the public health and environment.
¶ 54. My last major difference with the majority is with its decision to reverse the award of attorney’s fees without a remand. In essence the majority is ruling that any fee for work done by a lawyer, whether or not connected with litigation, cannot be *143 recovered from a person responsible for the public health hazard while the fee for the work of any other professional, whether or not connected with litigation, can be recovered. The decision is directly contrary to the U.S. Supreme Court’s decision in Key Tronic. It is also arbitrary without a supporting rationale.
¶ 55. The above is only the first major inappropriate result of the decision to reverse without a remand. As the majority decision recognizes, even where there is no statutory authority for the award of the costs of a lawyer’s services, the trial court could have based its civil penalty amount at least in part on reimbursing the Town for its litigation expenses. The court did not do so here because it covered those litigation expenses in the order to reimburse the Town for the fees paid to the lawyer and the engineer. In fact, attorney’s fees represent the bulk of the court’s financial award, and the civil penalty imposed, at two dollars per day, was far below the maximum of $10,000 per day authorized by 18 V.S.A. § 180(b)(6). The trial court should be given the opportunity to reconsider the amount of the civil penalty in light of the denial of attorney’s fees.
¶ 56. For the foregoing reasons, I dissent.
¶ 57. I am authorized to state that Justice Eaton joins this dissent.

 Costs are defined in 32 V.S.A. § 1471(a) as entry fees, service fees, and witness fees. Witness fees are statutory, id. § 1551, and do not include compensation for the services of the witness.